# PAUL *v.* CULLUM.

## APPEAL FROM THE SUPREME COURT OF THE TERRITORY OF ARIZONA.

No. 107. Argued November 13, 14, 1889. — Decided December 16, 1889.

In the absence of written stipulations or other evidence showing a different intention, partners will be held to share equally both profits and losses; but it is competent for them to determine, as between themselves, the basis upon which profits shall be divided and losses borne, without regard to their respective contributions, whether of money, labor, or experience to the common stock.

L. and W., the owners of a stock of goods, made a written agreement with H. reciting that the latter was " taken into partnership," that the stock should be inventoried and delivered to H. " as a capital stock " " to be sold with his entire direction and supervision under the name " of the L. and W. Company; that a new set of books should be opened, showing the business of the new firm; that the profits and losses should be shared in the proportion of eight-tenths for L. and W. and of two-tenths for H.; and that the " partnership " should pertain only to merchandising and have no connection with any outside business L. and W. might have jointly or separately. After this agreement was made, L. constituted H. his attorney in fact, with power " to bargain, and agree for, buy, sell, mortgage, hypothecate, and in any and every way and manner deal in and with goods, wares, and merchandise, choses in action, and other property in possession, or in action, and to make, do and transact all and every kind of business of what nature and kind soever, and also, for me and in my name, and as my act and deed, to sign, seal, execute, deliver and acknowledge such deeds, covenants, indentures, agreements, mortgages, hypothecations, bottomries, charter parties, bills of lading, bills, bonds, notes, receipts, evidences of debt, releases, and satisfactions of mortgage, judgment, and other debts, and such other instruments in writing of whatever kind and nature as may be necessary or proper in the premises; " *Held :*

(1) That by this agreement L., W. and H. became partners and as between themselves established a community of property as well as of profits and losses in respect to said goods and the business of the L. and W. Company;

(2) That in the absence of L. this power of attorney authorized H. to represent him in a general assignment of the property of the L. and W. Company for the benefit of its creditors.

REPLEVIN to recover possession of goods of the value of $35,000, taken by the defendant Paul from " the storerooms

on Congress Street in Tucson, Arizona," "formerly occupied
by Messrs. Lord & Williams Company;" "or for the sum of
thirty-five thousand dollars, the value thereof, in case delivery
cannot be had."

The defendant demurred, and also answered with a general
denial, and further pleaded that the seizure of the property in
dispute was made by him as the "duly elected, qualified and
acting sheriff of the county of Pima, Arizona Territory,"
under a writ of attachment duly issued in a case in which one
Thompson was plaintiff, and Lord and Williams were defend-
ants, "by virtue of which he levied upon and took possession
of the goods, wares and merchandise mentioned in the com-
plaint herein as the property of said defendants, Lord and
Williams, in whose possession it was and to whom it belonged,
and held the same as said sheriff, and by virtue of said writ, at
the time of the commencement of this action."

The cause was tried by the court, without a jury, and re-
sulted in a finding of facts which is set forth in the opinion of
the court, *post*, 545. The power of attorney referred to in the
first of those findings is printed in the margin.[1] . The agree-

---

[1] Know all men by these presents that I, Charles H. Lord, of the county of
Pima, Territory of Arizona, have made, constituted and appointed, and by
these presents do make, constitute and appoint C. E. Harlow, of the
county and Territory aforesaid, my true and lawful attorney for me and in
my name, place and stead, and for my use and benefit to ask, demand, sue
for, recover, collect and receive all such sums of money, debts, dues, ac-
counts, legacies, bequests, interests, dividends, annuities and demands
whatsoever, as are now, or shall hereafter become due, owing, payable, or
belonging to me, and have, use and take all lawful ways and means, in my
name or otherwise, for the recovery thereof by attachments, arrests, dis-
tress, or otherwise, and to compromise and agree for the same, and acquit-
tances, or other sufficient discharges for the same for me, and in my name
to make, seal and deliver; to bargain, contract, agree for, purchase, re-
ceive, and take lands, tenements, hereditaments, and accept the seizin and
possession of all lands, and all deeds, and other assurances in the law there-
for, and to lease, let, demise, bargain, sell, remise, release, convey, mortgage
and hypothecate lands, tenements and hereditaments upon such terms and
conditions, and under such covenants as he shall think fit. Also to bargain
and agree for, buy, sell, mortgage, hypothecate, and in any and every way
and manner deal in and with goods, wares and merchandise, choses in
action, and other property in possession, or in action, and to make, do and

ment between Lord, Williams and Harlow by which they formed the copartnership of the Lord & Williams Company referred to in Finding I. will be found in the opinion of the court, *post,* 547.

The court found as conclusions of law, on its findings of fact: "I. That the property in the complaint mentioned and described was wrongfully taken and detained by the defendant from the possession of the plaintiff. II. That the plaintiff is entitled to a judgment for the return of said property, and if the same cannot be made, for the sum of $35,000 against the defendant."

And thereupon the following judgment was entered:

"The court having this day signed and filed its findings of fact and conclusions of law in this case, and the value of the property claimed having been found by the court to be the sum of thirty-nine [five?] thousand dollars, and the property claimed having been taken into possession of the plaintiff: Therefore —

"It is adjudged that the plaintiff have and retain possession of the personal property described in the complaint, together with the costs of this action, amounting to the sum of five hundred and thirty-nine dollars."

transact all and every kind of business of what nature and kind soever, and also for me and in my name, and as my act and deed to sign, seal, execute, deliver and acknowledge such deeds, covenants, indentures, agreements, mortgages, hypothecations, bottomries, charter parties, bills of lading, bills, bonds, notes, receipts, evidences of debt, releases and satisfactions of mortgage judgment, and other debts, and such other instruments in writing of whatever kind and nature as may be necessary or proper in the premises.

Giving and granting unto my said attorney full power and authority to do and perform all and every act and thing whatsoever requisite and necessary to be done in and about the premises as fully, to all intents and purposes, as I might or could do if personally present, hereby ratifying and confirming all that my said attorney shall lawfully do, or cause to be done, by virtue of these presents.

In witness whereof, I have hereunto set my hand and seal the sixth day of April, one thousand eight hundred and eighty-one.

CHARLES II. LORD. [SEAL.]

Signed, sealed and delivered in the presence of —
CLAUDE ANDERSON.

This judgment was affirmed by the Supreme Court of the Territory on appeal; and from that judgment this appeal was taken.

*Mr. William Hallett Phillips* (with whom was *Mr. Benjamin Morgan* on the brief) for appellant.

I. This court is called upon as matter of law to review the judgment based on the findings. *Kerr* v. *Clampitt*, 95 U. S. 188; *Stringfellow* v. *Cain*, 99 U. S. 610; *Hargrave* v. *Head*, 105 U. S. 45. It is a well-settled rule that where a court finds a material fact which is not supported by any evidence, a bill of exceptions may be taken to bring up for review the ruling in that particular, and, if necessary, the whole of the testimony should be sent up. *The Francis Wright*, 105 U. S. 381; *United States* v. *Pugh*, 99 U. S. 265. This rule is subject to the limitation that the facts are material and ultimate facts.

When all the evidence is properly presented in the record, this court can examine the same to see whether it was competent evidence to establish the facts found. *United States* v. *Clark*, 96 U. S. 37.

The sole issue in the case is whether the property in question, at the time of the attachment, belonged to the plaintiff or belonged to Lord & Williams. If the plaintiff established ownership, the goods were not subject to attachment by the creditors of Lord & Williams, and the plaintiff must recover. The court finds that issue of title in favor of the plaintiff, by virtue of an assignment alleged to have been made to plaintiff prior to the attachment by the Lord & Williams Company. It finds that the goods were, at the date of the assignment, the property of the Lord & Williams Company.

The second finding is, that the firm of Lord & Williams, on October 25, 1881, made an assignment to plaintiff. This finding is entirely unsupported by any evidence. No such assignment, as shown by the record, was ever made. The only assignment was that by the Lord & Williams Company, a different firm, and, as indicated in the first finding, was made on October 25, 1881, and is undoubtedly the one referred to by

the court in the second finding. It is through this assignment of the Lord & Williams Company that the plaintiff claims title. Whether the Lord & Williams Company had any title themselves depends upon the construction of the agreement between Lord & Williams and C. E. Harlow, by which the Lord & Williams Company was organized, which agreement was admitted in evidence against the objection of the defendant.

The question for decision is whether the firm of Lord & Williams divested themselves of ownership of the goods by the arrangement contained in the agreement of March 1, 1881.

It is apparent that this agreement was only an arrangement for selling the goods. By its " terms the said Lord & Williams have this day taken into partnership the said C. E. Harlow under the following conditions: They agree that an inventory of their stock of merchandise shall be taken under the supervision of said Harlow, and after its value shall be agreed upon by the parties interested *the same shall be turned over and delivered to the said Harlow as a capital stock, to be sold with his entire direction and supervision under the name and style of the Lord & Williams Company for the term of one year from the date of this agreement.*"

It is submitted that this agreement did not work such a devolution of the *title* to the goods, as to exempt them after its execution, from attachment as the goods of Lord & Williams. It was an arrangement by the owners to put the goods on the market, with an agreement to pay the managing agent a certain per cent of the profits. The only interest of Harlow was in any profits that might have resulted. Though termed a partnership, the real contract as between the parties was one of employment.

But whether Harlow was liable as a partner or not is not a controlling question. Admitting that he was so liable, it does not follow that he acquired any interest in the stock so as to exempt it from attachment for debts contracted by Lord & Williams before his connection with the business. No such interest follows from the fact that he was to share profits and losses ; it is not pretended there were any profits to share and

the business was terminated by the assignment. *Blanchard* v. *Coolidge*, 22 Pick. 151. All that Harlow acquired was a personal right of action against Lord & Williams, or a right to an account; the arrangement did not change the property. Jessel, M. R., *Alfaro* v. *De La Torre*, 24 Weekly Rep. 510.

Sharing profit and loss is no proof of partnership in the stock. *Donnell* v. *Harshe*, 67 Missouri, 170; *Clifton* v. *Howard*, 89 Missouri, 192. Parties in a mercantile partnership may so stipulate, as between themselves, that the ownership of the stock shall remain with the original proprietors, and that one of the associates shall have only an interest in the profits. Each case must be judged on its own facts. A good illustration of this is afforded by the case of *Drennen* v. *London Assurance Co.*, twice decided by this court. 113 U. S. 51; 116 U. S. 461.

II. The power of attorney to C. E. Harlow, the admission in evidence of which was also objected to, conferred no authority on him to sign the name of Lord to the assignment; it was simply a general power of attorney, authorizing Harlow to attend to the personal affairs of Lord, in his absence.

It does not purport to empower Harlow to perform any partnership act for Lord, much less such an act as the assignment in question. For this a special authorization was necessary. *Wooldridge* v. *Irving*, 23 Fed. Rep. 676; *Hook* v. *Stone*, 34 Missouri, 329. If Harlow possessed no authority, by virtue of the power of attorney, to sign Lord's name to the assignment, the latter is void for want of the assent of one of the partners. All the partners must unite in such a disposition of the partnership property. *Welles* v. *March*, 30 N. Y. 344; *Palmer* v. *Myers*, 43 Barb. 509; Burrill on Assignments, 5th ed. 126, 127.

While it is true that the partner who did not join in the assignment may ratify it, such ratification cannot relate back so as to invalidate intervening attachments. *Holland* v. *Drake*, 29 Ohio St. 441; *Stein* v. *La Dow*, 13 Minnesota, 412. It was on this ground that defendant objected to the introduction of any evidence, showing an attempted ratification of the assignment by Lord, the non-concurring partner.

*Mr. Lucien Birdseye* for appellee.

MR. JUSTICE HARLAN delivered the opinion of the court.

In an action brought in a District Court of the Territory of Arizona, by G. H. Thompson against C. H. Lord and W. W. Williams, partners under the name of Lord & Williams, an attachment was sued out, October 28, 1881, and levied by the sheriff, the present appellant, upon " certain goods, wares and merchandise, being the entire stock of Lord and Williams." H. B. Cullum, claiming to be the owner of the property at the time the attachment was levied, brought this action against the sheriff to recover possession thereof, or its value, in case delivery could not be had. The answer put in issue the plaintiff's ownership of the goods, and averred that, when taken under the attachment they were owned by and in possession of Lord and Williams. The pleadings, therefore, raised the question of the ownership of the goods attached.

The District Court made the following finding of facts:

" 1. That on the 25th day of October, A.D. 1881, at the city of Tucson, Charles H. Lord, W. W. Williams and C. E. Harlow, then, and for several months before that time, composing the mercantile firm of Lord & Williams Company, and exclusively engaged in general commercial business, viz., buying and selling goods, being insolvent, made and executed as such firm a general assignment of all their property, not exempt from execution, for the equal benefit of all their creditors, to Henry B. Cullum, the plaintiff, and that the plaintiff immediately accepted said assignment and took possession of the property conveyed by it, including the property mentioned in the complaint, which property was a portion of the property of the said Lord & Williams Company at the time of the assignment. The assignment was executed in the firm name by W. W. Williams, and also signed by said Williams and said Harlow individually, and by the said Lord by his attorney the said C. E. Harlow, the said Harlow then holding a general power of attorney from him, and the said Lord being then absent from the Territory, and sick, and his whereabouts

being entirely unknown at that time to his partners and family, though every reasonable effort had been made to dis, cover it, and that said assignment was ratified and approved by said Lord at the earliest opportunity.

"2. That on the said 25th day of October, A.D. 1881, and for a long time previous thereto, at said city, the said Charles H. Lord and W. W. Williams were copartners in the banking business and in dealing in live stock, under the firm name of Lord & Williams; that on said last mentioned day the said firm of Lord & Williams, being then insolvent, made and ex-ecuted a general assignment of all its property, not exempt from execution, for the general benefit of all its creditors, to the said Henry B. Cullum, who thereupon immediately entered upon the possession of the same and accepted the trust. Said assignment was executed in the firm name by said Williams, and also signed by him, individually, and by said Harlow, as Lord's attorney in fact.

"3. That said assignments were made in good faith by the said firms respectively, and that at the time of making the same the assignors had full confidence in the ability and integ-rity of said Henry B. Cullum.

"4. That on the 28th day of October, A.D. 1881, one G. Howard Thompson commenced a suit in this court against the said Lord & Williams, and sued out an attachment therein against the property of the said Lord & Williams, and placed the same in the hands of the defendant, Robert H. Paul, who was then the sheriff of Pima County, aforesaid; and the said Paul, claiming that the said goods and property in the com-plaint mentioned and described were then the property of the said Lord & Williams, and not the property of Cullum, the plaintiff, seized and attached the same on October 28, 1881, and held the same until replevied in this suit.

"5. That at the time the property was so seized and at-tached it was the property of the plaintiff, and not subject to such seizure or attachment.

"6. That its value was $35,000."

The plaintiff, having taken the property into possession, the judgment was that he retain possession and recover his costs.

That judgment was affirmed by the Supreme Court of the Territory, the record in that case containing an agreed "statement on appeal," upon which, in connection with the finding of facts, the case was heard and determined in that court.

The appellant contends that there was no evidence in the record of an assignment by Lord & Williams, and insists that the second paragraph of the finding of facts could only have reference to the assignment made, on the 25th of October, 1881, by the Lord & Williams Company. But the finding plainly imports that there were two assignments to Cullum on the same day, one by the Lord & Williams Company, and the other by Lord & Williams. The absence from the record, as prepared for the Supreme Court of the Territory, of the deed of assignment by Lord & Williams — if any such deed was executed — is explained by the fact that the real contest between the parties was in respect to the assignment in the name of the Lord & Williams Company for the benefit of its creditors. But it is not essential in this case to inquire whether an assignment was made by the firm of Lord & Williams as distinguished from the Lord & Williams Company ; for it is not claimed that the goods seized under the attachment were embraced by any other assignment than the one made by the latter firm.

It appears that prior to March 1, 1881, C. H. Lord and W. W. Williams were engaged as partners, under the style of Lord & Williams, in the buying and selling of goods, as well as in the business of banking. The latter business was kept distinct from the former, although both were carried on in the same building.

On the day last named the following written agreement was entered into between the parties signing it :

"Tucson, A. T., March 1st, 1881.

"This agreement, entered into by and between Lord and Williams and C. E. Harlow, all of Tucson, Arizona Territory, witnesseth : That the said Lord and Williams have this day and date taken into partnership the said C. E. Harlow under the following conditions: They agree that an inventory of their

stock of merchandise shall be taken under the supervision of said Harlow, and after its value shall be agreed upon by the parties interested the same shall be turned over and delivered to the said Harlow as a capital stock, to be sold with his entire direction and supervision under the name and style of Lord and Williams Company for the term of one year from the date of this agreement. The said Harlow shall attend to all the business of the new concern, such as the payment of debts, employment of help, purchase of goods, payment of same, and all expenses attending the proper and legitimate carrying on of the business; shall open a new set of books, in which a complete and true exhibit of the business shall be kept, and always open to the parties interested for inspection; shall, as far as possible, do a cash business; shall remit money to pay debts incurred as fast as the same may be realized from sales; shall not sign, endorse, or negotiate any notes, bonds, or agreements using the new firm name unless strictly in connection with the business of the house, and only then after consultation with one or both the other members of the firm; shall cause, at the end of each month, an exhibit to be made of the condition of the firm in the shape of a balance-sheet; and, finally, every six months shall cause an inventory to be taken of all the property and the books balanced, after which any profit there may be shall be divided as follows: The said Lord and Williams shall have eight-tenths of the same, and the said Harlow two-tenths of the same. In case of loss, the same ratio shall prevail in sharing the same. In this contract it is distinctly understood by the parties interested that the partnership only pertains to that of merchandising, and has no connection in any shape or manner with any business the said Lord and Williams may have jointly or severally outside. Any trade or business they may be able to direct to the new concern they shall do so, any profits to be derived from same to be considered identical with those arising from business with other parties. They, however, shall have at cost price any merchandise they may need or require for their own individual account. In case said Harlow shall add any cash to the capital stock he shall receive for same ten per cent interest per

year which amount shall be charged to the general exchange and interest account.

> "C. H. LORD.
> "W. W. WILLIAMS.
> "C. E. HARLOW."

The goods whose ownership is here involved constituted a part of the stock of merchandise referred to in the above agreement. Nevertheless, appellant contends they were liable to be taken under the attachment sued out by Thompson against the property of Lord & Williams.

This contention rests, in part, upon the assumption that the agreement of March 1, 1881, did not work a change in the ownership of the goods, or establish a partnership between Lord and Williams and Harlow, or pass any interest whatever in the property to Harlow; but constituted the latter simply an agent for the other parties in respect to their mercantile business, thereafter to be carried on under the name of the Lord & Williams Company, as distinguished from their banking business, to be carried on, as before, under the name of Lord & Williams. It is, consequently, insisted that the goods levied upon belonged to the firm of Lord & Williams at the time the attachment was levied.

The words of the agreement forbid such an interpretation of its provisions. The only fact tending to support the position of appellant is, that Harlow did not put any goods into the new concern, nor pay any money for an interest in the property, or for the privilege of becoming a partner with Lord and Williams in their mercantile business to be conducted under his direction and supervision. But that is not a controlling fact in view of all that is disclosed by the agreement. The contribution by Harlow of money or property was not essential to the creation of the partnership. It was competent for Lord & Williams, in consideration of his undertaking the entire charge and control of the business of the Lord & Williams Company, to give him an interest — though not necessarily an equal interest — in the property, which was to constitute, at the outset, the whole capital of the partner-

ship. And that is what they did. The agreement, it will be observed, prescribes the conditions upon which Harlow was "taken into partnership" by Lord and Williams in respect to the property placed in his hands "as a capital stock" for the Lord & Williams Company. He was to open "a new set of books," exhibiting therein the business of the "new concern" or the "new firm," the profits of such business to be divided, at stated periods, upon the basis of eight-tenths to Lord & Williams and two-tenths to Harlow, and the losses to be borne in the same ratio. That which Harlow was to receive when the books were balanced cannot be regarded merely as compensation for services rendered as agent or manager for Lord and Williams, but as the stipulated part of the profits, as profits, accruing to him as a partner in the new firm of the Lord & Williams Company, the owner of the partnership property. He became, by the agreement, one of the joint owners and possessors of that property. That instrument does not so declare, in terms, but such is the necessary implication of its words.

While, in the absence of written stipulations or other evidence showing a different intention, partners will be held to share equally both profits and losses, it is entirely competent for them to determine, as between themselves, the basis upon which profits shall be divided and losses borne, without regard to their respective contributions, whether of money, labor, or experience, to the common stock. Story on Partnership, §§ 23, 24. Such matters are entirely within the discretion of parties about to assume the relation of partners. If anything further was needed to prove that Harlow became a partner with, and not a mere agent or employé for, Lord & Williams in their mercantile business, it is found in that clause of the agreement providing that "the partnership only pertains to that of merchandising, and has no connection in any shape or manner with any business the said Lord and Williams may have jointly or severally outside."

A different conclusion, it is contended, is required by the decisions of this court in *Drennen* v. *London Assurance Co.*, 113 U. S. 51, and 116 U. S. 461, 472. The principal question in that case was whether one Arndt became, by virtue of a certain

written agreement a member of an existing partnership, so as to give him an interest in its property, within the meaning of a contract of fire insurance, which provided that the policy should be void if the property insured " be sold or transferred, or any change takes place in title or possession, (except by succession by reason of the death of the insured,) whether by legal process or judicial decree, or voluntary transfer or conveyance."

When the case was first before this court it was held that the agreement there in question did not make Arndt a member of the existing partnership, but only contemplated his becoming a member of the firm at a future time and after the performance of certain conditions, one of which was the creation of an incorporated company. It was observed in the same case that the parties *ex industria* excluded the possibility of Arndt's acquiring an interest in or control over the property insured in advance of the formation of such corporation.

When that case was brought here a second time, the court, after stating that mere participation in profits would not give an interest in the property contrary to the real intention of the parties, said : " Persons cannot be made to assume the relation of partners, as between themselves, when their purpose is that no partnership shall exist. There is no reason why they may not enter into an agreement whereby one of them shall participate in the profits arising from the management of particular property without his becoming a partner with the others, or without his acquiring an interest in the property itself, so as to effect a change of title."

The case now before us is altogether different. It cannot be said that the parties excluded the possibility of Harlow's acquiring an interest in the property. They did not form a partnership in which, as between themselves, there was to be a community of interest only in profits and losses, leaving the property in the goods to remain in Lord and Williams. On the contrary, the written agreement shows a purpose to put the goods themselves into partnership, and to establish a community of property, as well as a community of profit and loss among its several members.

For the reasons stated we are of opinion that the agreement of March 1, 1881, created between the parties signing it a partnership by the name of the Lord & Williams Company, and that the stock of merchandise therein mentioned became the property of such partnership. It results that, if the deed of assignment of October 25, 1881, was not invalid upon the ground urged by the defendant and to be presently adverted to, the right of property passed by that instrument to the appellee, for the benefit of the creditors of the Lord & Williams Company, before the goods were seized under the attachment against the property of Lord & Williams.

Thus far we have assumed that the deed of assignment in question was executed by Lord. But the appellant contends that it was void, as against Thompson, the plaintiff in the attachment, because not so executed as to become a valid assignment of the property described in it. The deed was signed by Williams and Harlow and by the Lord & Williams Company. It was executed for Lord by Harlow, as his attorney in fact. Harlow acted for him under a written authority, dated April 6, 1881, which, among other things, constituted Harlow attorney in fact for Lord, with power "to bargain and agree for, buy, sell, mortgage, hypothecate, and in any and every way and manner deal in and with goods, wares and merchandise, choses in action, and other property in possession or in action, and to make, do and transact all and every kind of business of what nature and kind soever, and also for me and in my name, and as my act and deed, to sign, seal, execute, deliver and acknowledge such deeds, covenants, indentures, agreements, mortgages, hypothecations, bottomries, charter parties, bills of lading, bills, bonds, notes, receipts, evidences of debt, releases and satisfactions of mortgage, judgment and other debts, and such other instruments in writing of whatever kind and nature as may be necessary or proper in the premises."

The argument of the appellant upon this branch of the case is, that the authority of one partner to make a general assignment of the partnership effects to a trustee for the benefit of creditors cannot be implied from the partnership relation merely ; that Lord's general power of attorney did not author-

ize Harlow to act for him in a general assignment either of the property of the Lord & Williams Company or that of Lord & Williams; and that a special authorization was necessary to enable him to represent Lord in such a matter; further, that while Lord might subsequently ratify, as he did, the act of Harlow, such ratification occurred after the levy of Thompson's attachment, and could not relate back so as to invalidate that intervening attachment.

It is not necessary to consider all of these propositions; for, we are of opinion that the above power of attorney, interpreted in the light of the relations in business of the parties to it, gave Harlow ample authority to represent Lord in any general assignment, made in good faith, of the property of the Lord & Williams Company for the benefit of its creditors. In respect to goods, wares, merchandise, choses in action and other property in possession or in action, and in respect to all business of whatever nature and kind, Harlow, for Lord, and in his name, was expressly authorized to bargain, agree for, buy, sell, mortgage and hypothecate the same, and in any and every way and manner to deal in and with such property and rights. And this authority was conferred, while Harlow had, by another written agreement, to which Lord was a party, the entire direction and supervision of the property and business of the Lord & Williams Company. It would be extraordinary if a partner to whom was committed such direction and supervision of partnership property, could not, in the matter of a general assignment of the partnership effects for the benefit of firm creditors, represent an absent partner who had given him the broad authority expressed in the above power of attorney.

*Judgment affirmed.*