WEIZER v. COMMISSIONER OF
INTERNAL REVENUE.
No. 10519.

Circuit Court of Appeals, Sixth Circuit.
Jan. 26, 1948.

Milton R. Schlesinger, of Cleveland, Ohio (Ulmer, Berne & Gordon, M. R. Schlesinger, and Richard Katcher, all of Cleveland, Ohio, on the brief), for petitioner.

Morton K. Rothschild, of Washington, D. C. (Theron Lamar Caudle, Helen R. Carloss, Robert N. Anderson, and Maryhelen Wigle, all of Washington, D. C., on the brief), for respondent.

Before SIMONS, MARTIN, and MILLER, Circuit Judges.

MILLER, Circuit Judge.

The petitioner, William Weizer, seeks a review of an order of The Tax Court affirming an income tax deficiency assessment of $11,109.80 for the year 1941. He complains of the ruling of both the Commissioner and the Tax Court that he and his wife Florence Weizer were not partners in 1941 in the firm known as William Weizer and Company, and that that part of the net proceeds of the business allocated by the firm to his wife as his partner was chargeable as income to the petitioner.

The facts are not in dispute, but as the case turns upon them in their entirety, we review them in some detail. The petitioner was born in Roumania, came to the United

States in 1902, and thereafter became a citizen. He had attended public school in Roumania, and went to night school a short while after coming to the United States. He worked in factories and steel mills as a helper, earning a dollar and a half for a ten-hour day, and later cleaned railroad cars for $50 a month. In 1907 he started a business in Bellaire, Ohio, of buying and selling secondhand scrap materials, such as scrap iron, paper, rags and other scrap metals. He started as a peddler with a horse and wagon. For awhile he had a silent partner, who was the cashier of the Dollar Savings Bank. At that time he adopted the firm name of William Weizer and Company which has been used ever since, although the silent partner dropped out after three or four years. He married Florence E. Weizer in 1915. Mrs. Weizer was born in Wisconsin, attended high school and the Duluth Business College and had business experience in the advertising department of a newspaper, of which she was in charge. At that time petitioner's business was worth between $1500 and $2000. When Florence Weizer was married to petitioner she had cash savings amounting to $500 which she turned over to the petitioner who deposited it in the bank and used it in the business of William Weizer and Company. Mrs. Weizer also owned an endowment insurance policy which matured about 1925 and from which she received about $1100. She also turned this money over to petitioner who deposited it in the bank account and used it in the business. The business needed money at the time. These payments were not made as loans, and were not carried on the books as loans. Nor did the books of the company ever carry a capital account in the name of Florence Weizer.

The scrap materials were purchased from coal mines, steel mills, factories, and small dealers. Petitioner spent most of his time on the outside soliciting business, spending only about one and one-half hours a day in the office. He opened the office in the morning. Over the period of years he developed some regular customers so that a certain percentage of the business came to the office automatically and was handled by foremen or over the telephone. At times the inventory of scrap materials was large. At the end of 1939 it was $5,050. The purchases during 1940 were $75,849, and the inventory at the end of 1940 was $4,500. The purchases during 1941 were $73,992 and the inventory at the end of 1941 was $3,000. The demand for scrap metal materials increased in 1941 due to war production and prices went up with a resulting increase in profits. The business was operated in 1938 at a loss of $14,494. It was operated in 1939 at a loss of $5,522. It was operated in 1940 at a gross profit of $18,089, and in 1941 at a gross profit of $46,807. The business employed 10 or 12 yard men, who prepared the scrap for resale and hauled or loaded materials, together with a foreman who supervised the yard men and was responsible to the petitioner. A girl was employed in the office. The business assets included a frame office building, two frame warehouses, a frame rag shop, a shear and a scale. The net worth of the business, as of January 1, 1941, was $1188.02.

From the time of her marriage in 1915 and through 1941, the year in dispute, Mrs. Weizer rendered extensive and important services to William Weizer and Company. Petitioner was the "outside man" of the business, working at times from 6 in the morning until 7 or 8 o'clock in the evening. Florence Weizer worked in the office. She handled telephone sales and sales consummated by letter. Either she, or the office girl working under her direction and supervision, handled the billing, slow accounts, deposits, the bookkeeping, invoices, checking and payment of bills, statements of account, preparation of financial statements, the incoming and outgoing correspondence, errors, complaints and allowances, checking of freight cars on the firm's rail siding and demurrage, payroll records and payments, preparation of formal bids, purchase of office supplies and printing and reconciliation of bank statements. She averaged from five to six hours a day in the office and frequently spent evenings, and occasionally Sunday, at home working at a desk which she kept there with a typewriter and firm stationery. Mr. and Mrs. Weizer jointly passed on the charging off of worthless accounts. They jointly consulted the Company's attorney when legal

.advice was necessary. They jointly sat in all conferences with union officials, but because Mr. Weizer had little patience in such matters, Mrs. Weizer usually handled the actual adjustments. Mrs. Weizer frequently discussed with the petitioner during the evening matters' which had arisen in the office during the day. She was never paid a salary for her services and was not considered an employee.

William Weizer and Company had a bank account under the firm name with Dollar Savings Bank prior to and in 1922 when the First National Bank of Bellaire took over the Dollar Savings Bank and all its accounts in a merger. Checks on the First National Bank of Bellaire could be signed by the petitioner or by his wife. There was introduced into evidence the firm's signature card with that bank dated in 1925 and bearing the signature of William Weizer and Florence E. Weizer. The card carried a legend typed thereon by the bank reading "Wm. Weizer and Co., a partnership." James E. Green, Cashier of the bank in 1925, testified that this card indicated that the firm was recognized by the bank as being a partnership, and that it was the understanding of the bank that the partners were William Weizer and Florence E. Weizer. Petitioner and his wife also had a joint savings account in the Bridgeport Savings and Loan Bank in Bellaire. Both the petitioner and his wife had separate individual savings accounts in two other banks in Bellaire. In 1941, William Weizer and Company had a small account with the Union Savings Bank. Checks on this account could be signed by the petitioner only.

At some time during the years following the time when Florence Weizer turned over her $1600 for use in the business, a house in Bellaire, at a cost of $3700, and a house at Moundsville, West Virginia, at a cost of $4,000, were purchased in her name. Some stock in the Ohio Power Company was also purchased in her name. Government bonds and some stock are also owned by petitioner and his wife jointly. These purchases were paid for out of the assets of the business. Petitioner also owns various kinds of property in his individual name. They have always drawn sums from the business to pay their joint living expenses. Whenever she or the petitioner withdrew any money it was shown on the books but there was no allocation of such withdrawals to either person.

William Weizer and Company filed from year to year, including 1941, payroll reports with the Ohio Bureau of Workmen's Compensation and made contributions into the Ohio Bureau of Unemployment Compensation as an employer. Both the reports and the certificates issued by the Bureau were made out "William Weizer d.b.a. Wm. Weizer and Co."

The petitioner filed a separate individual income tax return for the year 1938. Florence Weizer did not file a separate return for that year. Joint returns in the name of William and Florence Weizer were filed for the years 1939 and 1940. A partnership income tax return was filed in March 1942 for the year 1941 for William Weizer and Company. This was the first partnership return filed for the company. It reported a net income for the business in the sum of $42,478.27, broken down into $21,239.14 for the petitioner and $21,239.13 for Florence Weizer. The petitioner and his wife filed separate individual returns for 1941 in which each reported the above amounts as their respective shares of the income of the business.

There was no express contract, oral or written, prior to 1942 between the petitioner and Florence Weizer to carry on the business as a partnership. They considered the business as their joint business and did not think written articles of partnership necessary. However, they discussed the subject of a written agreement with their attorney, Mr. Schertzer, several times prior to 1941, possibly as early as 1929 or 1930, but Mr. Schertzer never drafted such articles. Following his death in the latter part of 1941, they placed their legal matters in the hands of Mr. Cooper, who had "Articles of Co-Partnership" prepared by the girl in his office. This agreement was executed by petitioner and his wife on January 2, 1942, although the agreement recited that it was executed on January 1, 1941. These articles provided that the parties agreed "to become company partners un-

der the firm name and style of Wm. Weizer and Co.," that each partner had "contributed an equal amount to the capital of said partnership," and that the partnership would commence on January 1, 1941 and continue until dissolved. The wording and exact terms of the agreement were left to Mr. Cooper.

■ The Tax Court held that the business of William Weizer and Company was conducted by the petitioner as a sole proprietorship during the year 1941; that there was no agreement between petitioner and his wife, either oral or written, to carry on a business in partnership in 1941 or in any prior year; and that Florence Weizer turned over to the petitioner the $500 in 1915 and $1100 in 1925 without any oral agreement that such amounts represented an investment of her capital which was to remain in the business or which was in consideration for a share in the profits and losses of the business. It ruled that the foregoing facts did not constitute a valid family partnership for income tax purposes and applied the general rule announced by the Supreme Court in Commissioner v. Tower, 327 U.S. 280, 66 S.Ct. 532, 90 L.Ed. 670, 164 A.L.R. 1135 and Lusthaus v. Commissioner, 327 U.S. 293, 66 S.Ct. 539, 90 L. Ed. 679. Those cases held that for federal income tax purposes the Court could look through the execution of formal articles of partnership and determine for itself whether the wife of the owner of a business had become a real partner in fact or was merely a partner in form for the purpose of reducing income taxes. Although in those cases the alleged partnership was not recognized for income tax purposes, yet the Court specifically stated— "There can be no question that a wife and a husband may, under certain circumstances, become partners for tax, as for other, purposes. If she either invests capital originating with her or substantially contributes to the control and management of the business, or otherwise performs vital additional services, or does all of these things she may be a partner as contemplated by 26 U.S.C. §§ 181, 182, 26 U.S.C.A. Int.Rev. Code, §§ 181, 182. The Tax Court has recognized that under such circumstances the income belongs to the wife." [327 U.S. 280, 66 S.Ct. 537.] We are of the opinion that in the present case Florence Weizer complied with all of these requirements, although compliance with only one of them is required, and that the Tax Court was in error in not recognizing the validity of the family partnership under the rule so announced.

As a preliminary matter, it is well to point out that the opinion of the Tax Court was not written by the trial judge who heard the case, because of the expiration of his term of office before the case was handed down. In this connection, we refer to the statement of the trial judge during the trial that he had no reason to doubt the truthfulness of every statement made by Florence Weizer as a witness on the stand. The testimony of both Florence Weizer and William Weizer, as well as that of Mr. Green and Mr. Cooper, was uncontradicted. Mr. Cooper was not even cross-examined. The Commissioner offered no evidence at the close of the petitioner's case. The situation is similar to that recently considered by this Court in Lawton v. Commissioner, 164 F.2d 380, also a family partnership case, where conceiving the controlling question to be one of law based on undisputed facts, the ruling of the Tax Court rejecting the validity of the family partnership was set aside. The general observations in the opinion in that case as to the effect of the Tower and Lusthaus cases and the controlling weight to be given to undisputed and uncontradicted testimony of unimpeached witnesses, are also applicable here.

■ In our opinion, the evidence appears conclusive that Florence Weizer invested in the business capital originating with her. The $1600 which she turned over to her husband was her own individual money, not a gift from her husband. It was put into the business to be used as capital, and was so used. The record is devoid of any evidence to the effect that it was a loan. On the contrary, both petitioner and his wife testified that it was not a loan. It was not evidenced by a note; it was not carried as a loan on the books of the company. The record is also de-

void of any evidence of its repayment as a loan. No witness testified to the fact concluded by the Tax Court that it was probably repaid through the purchase of property in Florence Weizer's name out of the assets of the business. On the contrary, the logical conclusion from the facts presented would seem to be that such property was acquired by Mrs. Weizer from time to time as distributions of the profits of the partnership as it became possible and advisable to do so. The size of the distributions totaling probably over $8000 negatives by itself that they were intended as repayment of loans totaling $1600. The evidence also appears convincing to us that Florence Weizer contributed substantially to the control and management of the business and performed vital additional services to those performed by her husband. The business could not have operated as it did without efficient office management. Such services are indispensable to the operation of any successful business. Mr. Weizer would have had little or no time to perform the outside duties of the business which he did perform very successfully unless he had been relieved of the office management and its myriad of details which the business necessarily involved. It is undisputed that her services to the business were additional to the services performed by her husband. The Tax Court recognized Mrs. Weizer's services as "very helpful and of value." We do not believe that the Tax Court's further characterization that they were in the nature of the competent services of an experienced office worker in any way prevents them from being both vital and additional services. In most small businesses vital services are performed by an experienced office worker. In many instances such an experienced office worker acquires an interest in the business and becomes a part owner or a partner and continues thereafter to perform those same services for which his training and experience have qualified him. Partners and co-owners arise from the ranks of trusted, efficient and experienced employees.

We recognize the fact that the formula above referred to does not by itself create a partnership and that compliance with it merely qualifies a family partnership to operate under income tax rulings applicable to partnerships generally. The Commissioner contends that the evidence fails to establish the elementary facts necessary to establish a partnership generally. These essential facts are pointed out by the Supreme Court in the Tower case as follows:

"A partnership is generally said to be created when persons join together their money, goods, labor, or skill for the purpose of carrying on a trade, profession, or business and when there is community of interest in the profits and losses."

We believe the facts of this case fully meet that definition. Mr. and Mrs. Weizer joined together their money and their skill for the purpose of carrying on the scrap material business. The right of each to draw on the joint business account, the withdrawals from the firm's assets for individual purposes without allocation between them, their joint action in major matters of policy, such as charging off worthless accounts, consultation on legal matters affecting the business, and negotiations with the union all strongly show their community of interest in the profits and losses. Profits were distributed by the purchase of property with the firm's assets. Losses were obviously likewise shared when the business was operated at a substantial loss both in 1938 and 1939. Profits either previously or subsequently earned were necessarily used to meet those losses. It is true that a partnership is based upon an agreement between the partners, but neither a written agreement or an express oral agreement is necessary. It is well settled in partnership law that the agreement essential to a valid contract may be either expressed in words or implied from conduct. Stewart v. Stovall, 191 Ky. 508, 514, 230 S. W. 929; See Annotation 18 L.R.A.,N.S., 972, 973. We believe the partnership agreement in the present case is conclusively shown by the act and conduct of Mr. and Mrs. Weizer, and we give very little effect to the fact strongly relied upon by the Tax Court that there was no express agreement between these parties either written or oral prior to 1942. The Commissioner has successfully contended in many family partnership cases that the formal execution of articles of partnership does not create a part-

nership for income tax purposes. It is equally true that the failure to execute such articles is not controlling. The nature of the business, its origin, its growth, the work of the parties in their respective fields and their mutual understanding that it was "our business" easily explain the absence of any formal articles of partnership. When the execution of such articles became advisable the matter had their attention as did other matters of policy in the business. Instead of interpreting the final execution of such formal articles of partnership in January 1942 as showing the beginning of a partnership as of that date, we view it, in light of the undisputed evidence of their decision to execute such articles a number of years before, as confirmatory of a mutual understanding of a partnership relationship of many years standing. The wording of the agreement, also stressed by the trial court, appears merely a matter of routine form left by the parties to their attorney.

The documentary evidence is conflicting. Reports to the Workmen's Compensation Bureau and Unemployment Compensation Bureau and the failure to file a partnership income tax return for years prior to 1941 is some evidence against petitioner's contention. The importance of the returns could easily have been overlooked in their chief concern that the payments required of the business by those returns were being correctly made. In any event, such evidence would seem to be more than offset by the signature card at the bank and the testimony of its cashier about it.

In the absence of an agreement showing a different intention, partners will be held to share equally in both profits and losses. This rule is not changed by the fact that one partner's contribution of time and skill is greater than that of the other. Paul v. Cullum, 132 U.S. 539, 550, 10 S.Ct. 151, 33 L.Ed. 430; Williams v. Pedersen, 47 Wash. 472, 92 P. 287, 17 L.R.A.,N.S., 384, and Annotation at page 391.

The order of the Tax Court is set aside and the case is remanded for proceedings consistent with the views herein expressed.