HARRY W. AND FLORENCE LEHMAN, PETITIONERS, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket No. 34280. Promulgated January 16, 1953.

*H. P. Forrest, Esq.*, for the petitioners.
*F. L. Van Haaften, Esq.*, for the respondent.

OPINION.

Tietjens, *Judge:* On the question as to whether or not the transactions set out in our findings resulted in taxable income, petitioners' argument is that the credit on the books to their account was never intended to be withdrawn from the partnership, was merely an adjustment of the capital accounts, and was never actually or constructively received by petitioners. Further, that under the Florida statute governing limited partnerships the petitioners could not have received anything from their increased capital contributions until after dissolution of the partnership and satisfaction first of the claims of creditors, etc.

It seems to us that these contentions simply skirt the critical issue, which is whether the broad terms of section 22 (a) of the Internal Revenue Code [1] require the credits of $10,000 to be included in gross income. Certainly under the partnership agreement and the other facts here present petitioners became entitled to and received an increased capital share in the partnership capital in 1948. There is no dispute on that score. The fact that the actual book entries evidencing the adjusted respective rights of the parties were not made till after March 31, 1948, is of no consequence. The petitioners were due their credits as of that date and all of the facts giving rise to their rights were in existence at that date. It is conceded that the transfers to petitioners did not come about by way of gift. It was the result of the managerial efforts of Harry combined with good business conditions for the partnership business. We do not think it is crucial whether the transfer to petitioners' capital accounts was in fact "compensation" for Harry's services. Surely the increase resulted in a gain or profit to petitioners. This situation is not similar to the unrealized increase in the value of a capital asset and section 22 (a) requires the inclusion in gross income of "gains or profits and income derived from any source whatever." This is such a gain or profit.

Under the agreement with their partners petitioners, if certain contingencies were met, were to receive credits on the partnership books totaling $10,000. The right to these credits ripened as of March 31,

---

[1] SEC. 22. GROSS INCOME.—

(a) GENERAL DEFINITION.—"Gross income" includes gains, profits, and income derived from salaries, wages, or compensation for personal service (including personal service as an officer or employee of a State, or any political subdivision thereof, or any agency or instrumentality of any one or more of the foregoing), of whatever kind and in whatever form paid, or from professions, vocations, trades, businesses, commerce, or sales, or dealings in property, whether real or personal, growing out of the ownership or use of or interest in such property; also from interest, rent, dividends, securities, or the transaction of any business carried on for gain or profit, or gains or profits and income derived from any source whatever. * * *

1948. It is suggested that because these credits were made to the capital accounts of petitioners, a capital transaction resulted and that any gain or loss to petitioners is to be postponed until dissolution of the partnership. But the question is not whether petitioners suffered or realized or might suffer or realize a loss or gain on disposition of their partnership capital shares or on dissolution of the partnership; or whether the other partners might be entitled to deductions because of the debits to their own capital accounts, as in *George D. Rosenbaum*, 16 T. C. 664, and 18 T. C. 35. Simply put, the question here is whether petitioners realized taxable income by virtue of the $10,000 increase in their capital accounts by reason of transfers from their partners. We think they did, and so hold. There is no showing that the value of the credits to which petitioners became entitled was not the full $10,000 because partnership debts in the year 1948 or some other undisclosed facts might erode that value. We think this situation should be no different in its tax consequences than if the partners had paid over to petitioners the $10,000 under an arrangement whereby petitioners agreed to use that sum to increase their investment in the partnership with a corresponding reduction in the capital shares of the other partners. Under those facts there could be no question but that the amount would be income to petitioners. Respondent was correct in taxing the full $10,000 to petitioners in that year.

Petitioners' further contention that the taxable income, if such it was, was not reportable until 1949 is without merit. They call attention to section 188 which provides:

If the taxable year of a partner is different from that of the partnership, the inclusions with respect to the net income of the partnership, in computing the net income of the partner for his taxable year, shall be based upon the net income of the partnership for any taxable year of the partnership (whether beginning on, before, or after January 1, 1939) ending within or with the taxable year of the partner.

On the basis of section 188, petitioners argue that since the book entry adjusting the accounts was not made until November 1, 1948, and that date is within the partnership fiscal year ended March 31, 1949, they were not required to include the $10,000 until 1949.

As pointed out above, we do not think the actual date of the book entries is the critical date. All facts entitling petitioner to the adjustment and transfer had occurred prior to the end of the partnership fiscal year ended March 31, 1948. Proper entries could have been made as of that date and we think the rights of the partners and their income should be computed as if the entry had been then made.

*Decision will be entered for the respondent.*