Leonard A. FARRIS and Katherine Farris, Petitioners,

v.

COMMISSIONER OF INTERNAL REVENUE, Respondent.

No. 5033.

United States Court of Appeals Tenth Circuit.

April 28, 1955.

Carl T. Smith, Wichita, Kan. (George B. Powers, John F. Eberhardt, Stuart R. Carter, Robert C. Foulston, Malcolm Miller, Robert N. Partridge and Robert

M. Siefkin, Wichita, Kan., were with him on the brief), for petitioners.

Walter B. Langley, New York City (H. Brian Holland, Asst. Atty. Gen., Ellis N. Slack, Robert N. Anderson and George F. Lynch, Spe. Assts. to the Atty. Gen., were with him on the brief), for respondent.

Before HUXMAN, MURRAH and PICKETT, Circuit Judges.

HUXMAN, Circuit Judge.

The question presented by this appeal is whether in 1948 the petitioner, Leonard A. Farris, received ordinary income in the amount of $12,500 in connection with the liquidation of a partnership of which he was a member. Petitioner, Katherine Farris, is the wife of Leonard A. Farris and, as such, joined in the joint tax return. Further reference to her will not be necessary herein. The collector's determination that Farris received ordinary income in the amount above stated was on petition for redetermination affirmed by the tax court and this appeal challenges the correctness of that determination. Since there is no dispute as to the statutory provisions involved, the tax statutes need not be cited.

There is no dispute in the facts and the only question is the permissible conclusions that may be drawn therefrom. In December, 1943, H. H. Royer, petitioner Leonard A. Farris (L. A. Farris), and R. H. Johnston formed a partnership under the name of Royer-Farris Drilling Company by written agreement. The partnership agreement stated that whereas Johnston, designated as party of the first part, was desirous of furnishing certain money for the participation in the acquisition and development of oil and gas properties and was desirous of being associated with Farris and Royer, known as parties of the second part, because of their knowledge and experience in the oil business, and whereas the second parties were experienced operators and were desirous of furnishing a substantial part of their time, knowledge and experience in the acquisition and development of such properties, and whereas the parties agreed that the furnishing of money and the furnishing of time, knowledge and experience was necessary to the success of the joint venture; it was agreed that Johnston would furnish $50,000 to be used in the acquisition and development of oil and gas mining properties in the Mid-Continent Field under the sole and direct supervision of Royer and Farris, and that Royer and Farris should devote such of their time and attention as was necessary to the objects of the partnership. The partnership agreement provided that Royer and Farris should conduct the joint venture under the name of Royer-Farris Drilling Company and that all properties acquired should be taken in that name and should be held for the benefit of the joint account. The joint venture agreement was to continue for two years with the privilege of renewal. It provided that at the termination thereof the profits of the venture should be divided, one-half to Johnston, and one-fourth each to Royer and Farris.

The partnership acquired two trucks, office equipment, an oil well drilling rig, and interest in oil properties. During 1944, 1945 and 1947, net losses were incurred. In 1946 there was a modest operating profit. In the partnership federal income tax returns for these years the profits and losses were divided according to the partnership agreement. Farris on his individual income tax return reported his share of these profits and losses.

On July 16, 1947, Royer died. He was a resident of Kansas and under the law of Kansas, as surviving partner, Farris was appointed administrator of the partnership estate by the Probate Court of Sedgwick County, Kansas, and as such administered the partnership estate, wound up its affairs, paid its debts and distributed the net assets. The Probate Court found that Roy H. Johnston was entitled to receive one-half of the net assets, L. A. Farris one-fourth, and Inez

M. Royer, executrix of the last will and testament of H. H. Royer, one-fourth. The total net assets remaining after the payment of all debts and costs of administration was $24,190.14. Under the probate court's order of distribution, one-half of this sum was distributed to Johnston, one-fourth each to Farris and to the estate of Royer, the deceased partner. The money distributed to Farris under the order of the court was the only distribution to him of the net assets of the partnership and was returned in his 1948 income tax return as a capital gain.

The Commissioner of Internal Revenue took the position that this sum constituted the receipt of ordinary income. He does this on the theory that Johnston was the owner of the entire capital of $50,000 and that Farris and Royer each owed the capital account their one-fourth interest in the capital structure, amounting to $12,500 each. In arriving at the deficiency which he assessed to Farris for 1948, he credited his capital investment account with the $6,047.54 which he received from the distribution of the capital assets under the order of the court, and charged him as though he had received an additional sum of $6452.46, the balance due from his capital account as constructed by the Commissioner. He reasons that the cancellation of this balance considered owing by him constituted the receipt of additional income. Predicated upon this, the Commissioner concluded that Farris had received an additional sum of $12,500 as ordinary income, which he failed to report as such. This was also the theory upon which the Commissioner was affirmed by the tax court.

The difficulty with this theory is that it is unsupported by the partnership agreement, the books of the partnership as set up by them, or the construction placed upon their agreement by the parties themselves. It is clear to us from a consideration of the agreement that Johnston was to contribute the $50,000 to the partnership assets, and that Farris and Royer were to contribute thereto their personal services and their expert skill and knowledge of the oil business, and that the parties valued Johnston's contribution as 50% of the total contribution and that of Farris and Royer each at 25% thereof, and that the interest of each partner in the capital assets should be in the amount of their contribution.

It is significant that the parties set up only one capital account and that was the capital account of the partnership; that the agreement provided that the sum of $50,000 should be invested by Farris and Royer and that the total of the assets acquired should be taken in the name of Royer-Farris Drilling Company and should be held for the joint account. While the findings and order of distribution of the probate court in the Royer estate are not res judicata in this proceeding, the acquiescence of the two remaining partners thereto and their acceptance of the distribution ordered thereby is persuasive of the construction they placed upon their partnership agreement. There is nothing in the record indicating that Johnston considered that Farris and Royer were each indebted to the capital account for $12,500, or indebted to him for this amount, and that he was making a voluntary contribution under the order of distribution of the probate court to his partners of capital assets he was entitled to receive.

The basic concept of a general partnership is that all parties make a contribution thereto and as a result share in the assets, the profits and losses, according to their contribution. In the absence of a contrary provision in the agreement where one partner contributes money or physical assets and other contribute personal services, skill and knowledge, they share in the capital assets according to the value placed on each contribution.

While not identical, the facts in this case bring it within the decision of the Supreme Court in Paul v. Cullum, 132 U.S. 539, 10 S.Ct. 151, 33 L.Ed. 430, where it was held that the contribution

of services by one partner constituted a contribution to the capital structure and made him one of the joint owners and possessors of the property of the partnership.

The case of Lehman v. Commissioner, 19 T.C. 659, upon which the tax court placed strong reliance, is not persuasive because the facts are entirely dissimilar to the facts before us, as a casual reading thereof will show. Under the partnership agreement in the Lehman case, the Lehmans "became entitled as of the end of the partnership year * * * to credits totalling $10,000 on the partnership books, this sum to be deducted from the capital accounts of the other partners." The tax court correctly held that this sum constituted the receipt of ordinary income. It was the same as though the other partners had paid them $10,000 in cash to be placed in their capital account.

The decision of the tax court is reversed and the cause is remanded with directions to enter judgment in conformity with the views herein expressed.