THOMAS E. LARSON, Petitioner v. COMMISSIONER OF INTERNAL REVENUE, Respondent
Larson v. Commissioner
Docket No. 43899-86.
United States Tax Court
T.C. Memo 1988-387; 1988 Tax Ct. Memo LEXIS 418; 55 T.C.M. (CCH) 1637; T.C.M. (RIA) 88387; August 17, 1988. Thomas E. Larson, pro se. Moira L. Sullivan, for the respondent. COHEN
MEMORANDUM FINDINGS OF FACT AND OPINION COHEN, Judge: Respondent determined a deficiency of $ 22,662 in petitioner's 1979 Federal income tax. After concessions by petitioner, the issue for decision is whether petitioner must recognize ordinary income during 1979 on the exchange of $ 35,000 in managerial services for a partnership capital interest, and if so, to what extent. FINDINGS OF FACT Some of the facts have been stipulated, and the stipulated facts are incorporated in our findings *419 by this reference. Petitioner resided in Erie, Pennsylvania, when the petition was filed. During 1979 petitioner was a tax and financial consultant to individuals and small businesses; he was also a part-time instructor at the University of New Hampshire. In the summer of 1979, petitioner, David M. Dodge (Dodge), and Stephen T. Jeffco (Jeffco) formed a corporation named Seacruise, Inc. Seacruise, Inc., was a New Hampshire corporation in which petitioner had an interest of 34 percent; the remaining shares were divided equally between Dodge and Jeffco. During 1979, petitioner decided to form a partnership called Seacruise Enterprises which would own and operate charter sailboats with a homeport of Portsmouth, New Hampshire. The general partners of Seacruise Enterprise were petitioner and Seacruise, Inc. To meet its required capital needs, Seacruise Enterprises proposed to offer 25 limited partnership units at $ 10,000 per unit. The general partners entered into a limited partnership agreement on August 31, 1979. Upon conveying the units, the general partners and each investor would execute the agreement. The agreement provided in relevant part: 1.01 Formation. The *420 parties hereto hereby form a Limited Partnership pursuant to the provisions of the Uniform Limited Partnership Act as enacted by the State of New Hampshire. The Partners shall forthwith execute and cause to be filed with the New Hampshire Secretary of State: (a) A Certificate of Limited Partnership as required by the Uniform Limited Partnership Act as enacted by the State of New Hampshire. * * * 1.04 Duration. The Partnership shall come into being upon the filing of a Certificate of Limited Partnership with the Secretary of State of New Hampshire and shall continue for a period of Seven (7) years and Two (2) months after the date of said filing.
Pursuant to the agreement, the general partners of Seacruise Enterprises were entitled to compensation and management fees of $ 10,000 per month during the nonoperating periods of the partnership. Petitioner had the ultimate authority and responsibility regarding the overall management and control of Seacruise Enterprises. Neither petitioner nor any of his partners made any cash contribution to Seacruise Enterprises. Petitioner raised all the capital for Seacruise Enterprises by selling limited partnership interests to his *421 clients and friends. A total of $ 85,000 to $ 90,000 in cash was received from various investors. On behalf of Seacruise Enterprises, petitioner negotiated the purchase contracts and paid cash towards two sailing vessels, a schooner named the "Appledore" and a new Gulfstar. Dodge secured the purchase of the "Appledore." Petitioner paid Dodge $ 10,000 directly, and gave Dodge additional checks totaling $ 22,000 as deposits on the "Appledore." Jeffco was responsible for filing the articles of limited partnership with the Secretary of State of New Hampshire; however, he never did. Jeffco withdrew from the deal before the end of 1979. Petitioner asked Jeffco for his 33-percent interest in Seacruise, Inc., but no shares of stock ever changed hands. By December 31, 1979, the partnership owed petitioner three and one-half months of management fees in the amount of $ 35,000. Petitioner received no cash from the partnership in 1979 because there was no cash available in the partnership to pay to him. In lieu of cash, petitioner made an accounting entry on the partnership's books, converting the liability of the management fee into a capital interest, representing three and one-half *422 units of the partnership. Petitioner reported receipt of the partnership interest as $ 35,000 in income on his Schedule C for the taxable year 1979. Petitioner also reported partnership losses of $ 26,623 and an investment tax credit of $ 8,553. No Form 1065 was filed for the partnership Seacruise Enterprises in 1979, and no corporate tax return was ever filed for Seacruise, Inc. In February 1980, petitioner suffered a nervous breakdown as a result of manic-depressive illness. Petitioner voluntarily admitted himself into a hospital three times between March and April 1980. From February 1980 until approximately the middle of the year, petitioner ceased all professional activities. During this time, several of his clients removed their books and records from petitioner's office. Dodge took the books and records of Seacruise Enterprises and Seacruise, Inc., from petitioner's apartment and attempted to continue the business. He was not successful, and the partnership defaulted during 1980 on the contracts for the purchase of the boats. In spite of subsequent efforts, petitioner was never able to recover any of the books and records. Petitioner was dispossessed from both his *423 apartment and his office in April 1980, and all of his business records were lost or taken. No suit was ever brought in any court by any investor against petitioner for the return of such cash invested. On February 24, 1984, petitioner submitted a Form 1065 (marked "final return") for the taxable year 1981 and a letter for Seacruise Enterprises to the Internal Revenue Service indicating that the partnership was terminated for tax purposes on January 1, 1981. In his notice of deficiency, respondent disallowed all of petitioner's claimed partnership losses and the investment tax credit for 1979. At trial, petitioner conceded the disallowed losses or investment tax credit; he now claims that he did not realize any taxable income in 1979 on the receipt of the partnership interest. OPINION We must determine whether petitioner's receipt of the partnership interest in exchange for management services constitutes 1979 taxable income, and if so, in what amount. Petitioner has repeatedly asserted that his unilateral action in December 1979 transferred a partnership interest to him. Although the other partners were not aware of the transfer, he believed that they would not object. *424 For purposes of this case, therefore, we assume that the transfer in fact occurred. Under section 83, [1] a compensatory transfer of a partnership capital interest results in taxable income to the transferee to the extent that the fair market value of the interest exceeds the amount paid for the interest, in the year that the rights to the interest are transferable or not subject to a substantial risk of forfeiture. See Hensel Phelps Construction Co. v. Commissioner,74 T.C. 939, 952 (1980), affd. 703 F.2d 485 (10th Cir. 1983); see generally McKee, Nelson & Whitmire, Federal Taxation of Partnerships and Partners, par. 5.02 (1977). Where property received by a taxpayer does not have a readily ascertainable fair market value, its value may be determined by reference to the fair market value of the consideration given for the *425 property. United States v. Davis,370 U.S. 65, 72 (1962). In Hensel Phelps Construction Co. v. Commissioner,74 T.C. at 954, we relied on Davis in valuing a partnership interest received under section 83 by reference to the ascertainable value of the services performed as consideration for the interest, stating: The value of the partnership interest that petitioner received is difficult to determine. There is no dispute, however, that petitioner and the individual owners dealt at arm's length. Thus, presumably, the value of the interest's petitioner received equaled the value of petitioner's construction services in addition to the value placed upon petitioner's loans to the partnership. Cf. United States v. Davis,370 U.S. 65, 72 (1962); Estate of O'Nan v. Commissioner,47 T.C. 648, 663-664 (1967). * * * Respondent asserts that Seacruise Enterprises was a partnership under New Hampshire law and Federal tax law during the year is issue and that, by virtue of section 83, petitioner's acceptance of the Seacruise Enterprises interest in 1979 in exchange for management services resulted in taxable, ordinary *426 income during that year to the extent of the value of the interest. Citing Farris v. Commissioner,222 F.2d 320 (10th Cir. 1955), and Hensel Phelps Construction Co. v. Commissioner, supra, respondent further asserts that the subject partnership interest was worth the value of the services for which it was exchanged, or $ 35,000. See also section 1.721-1(b)(1)(i), Proposed Income Tax Regs., 36 Fed. Reg. 10799 (June 3, 1971). Petitioner contends that the fair market value of the interest when received was zero. Petitioner argues that, in determining the fair market value of the partnership interest on the date of transfer, the Court must ascertain the "real value" of the partnership. In this regard, petitioner asserts that "one would have to look at the value of the partnership's interest in the boats since there were no other assets." Petitioner implies that the value was negated because the boats were in the sellers' possession and were substantially unpaid for at all relevant times, and in the event of default the cost in pursuing the interest would have exceeded its value. Petitioner also contends that, "under general common *427 law principles," he was contingently liable for the return of the investors' cash because "The cash investors in the partnership believed they had invested in a limited partnership, but since Articles of Limited Partnership were not filed, * * * the limited partnership never came into being." Petitioner further argues that the value of the services rendered is not an appropriate measure of the market value of the partnership interest received in this case because the transaction was not conducted at arm's length: Fair market value is defined under common law principles as an agreed upon price between a willing buyer and a willing seller dealing at arm's length. Since, for all intents and purposes, Petitioner was dealing with himself in this transaction, this would not be at arm's length. It is highly unlikely that a reasonable person would have paid $ 35,000 for a share of a partnership which did not have physical possession of its only two assets on the last day of the calendar year. * * * [T]he reason for the accrual was to increase capital and decrease debt to attract additional investors. None of the petitioner's arguments is persuasive. The fair market value of petitioner's *428 three and one-half units is readily ascertainable by reference to the price of identical units sold to the investors -- $ 10,000 per unit -- within a proximate time of the transfer of petitioner's units. No evidence suggests that the fair market values of the investors' units and petitioner's units were unequal. We are not persuaded that the partnership had no "real value" on December 31, 1979, as petitioner urges. First, the evidence does not establish that Seacruise Enterprises was liable, as of that date, for the return of the investors' cash due to the failure to file the limited partnership certificate. Petitioner has not demonstrated that the failure to file the certificate by December 31, 1979, was unreasonable or constituted a material breach or repudiation of the partnership agreement, i.e., grounds for recission by the investors, and the investors' inaction with respect to the general partners' failure to file the certificate suggests otherwise. Second, we are not persuaded that possession of the boats by the sellers diminished the value of the partnership's interests in them. There is no evidence that the defaults on the purchase of the boats were impending as of *429 the date petitioner received the partnership interest. Petitioner's contentions are obviously based on his hindsight of the events occurring after the year in issue. Our conclusion is also unaffected by petitioner's assertion that, because the transfer of the interest was not conducted at arm's length, its value cannot be ascertained by reference to the fair market value of his services. The fair market value of petitioner's services was effectively determined once the general partners and investors entered into the limited partnership agreement and cannot be repudiated by petitioner simply because the services and the partnership interest were exchanged under his control and not at arm's length. Petitioner alternatively contends that the partnership interest was subject to a substantial risk of forfeiture as of December 31, 1979. He asserts: Petitioner's rights to full enjoyment of his interest depended upon the partnership operating as planned and completing the purchase of the boats. The latter involved the future performance of substantial services by himself. He could not do so and did not do so. * * * If payments were not made pursuant to the purchase contracts on boats *430 in 1980, defaults would occur which would enable the sellers to retain the boats. Since the boats were the only partnership assets of value at that time, Petitioner contends that this is substantial within the meaning of I.R.C. Sec. 83. This argument has no merit. A right is subject to a substantial risk of forfeiture when the right "to full enjoyment of such property * * * [is] conditioned upon the future performance of substantial services by any individual;" if the rights of a transferee are subject to a substantial risk of forfeiture, the rights are not transferable. Sec. 83(c). Petitioner's ongoing performance of services would have been critical to the success of the partnership's business and its ability to avoid default under the boat purchase contracts. This condition, however, pertains to the risk of future loss of partnership assets, i.e., the value of petitioner's interest, rather than the forfeiture of petitioner's legal rights in the partnership interest. In reaching our decision, we must treat petitioner's representations on his 1979 tax return as admissions that can only be overcome by cogent evidence. no such evidence has been presented *431 in this case. We thus sustain respondent's determination. Decision will be entered for the respondent.
Footnotes
1. Unless otherwise indicated, all section references are to the Internal Revenue Code as amended and in effect during the year in issue. ↩