141 T.C. No. 15

UNITED STATES TAX COURT

CRESCENT HOLDINGS, LLC, ARTHUR W. FIELDS AND JOLEEN H. FIELDS, A PARTNER OTHER THAN THE TAX MATTERS PARTNER, Petitioners <u>v</u>.
COMMISSIONER OF INTERNAL REVENUE, Respondent

Docket Nos. 23756-11, 23757-11.          Filed December 2, 2013.

Holdings was a limited liability company formed on Sept. 7, 2006, and classified as a partnership for Federal income tax purposes. Resources was a limited liability company whose ownership was transferred to Holdings on Sept. 7, 2006. On Sept. 7, 2006, Resources entered into an employment agreement with P to have Holdings transfer a 2% interest in Holdings to P if P served as chief executive officer (CEO) of Resources for a period of three years ending on Sept. 7, 2009. The 2% interest was subject to a substantial risk of forfeiture and was not transferable. Holdings allocated partnership profits and losses attributable to the 2% interest to P for the taxable years 2006 and 2007 (years at issue). Ps included these amounts in their gross income for the years at issue. P resigned as CEO and forfeited his right to the 2% interest before it vested.

The issue is whether P or the other partners should recognize the undistributed partnership income allocations attributable to the 2% interest for the years at issue.

Held: The 2% interest is a partnership capital interest, not a partnership profits interest. Rev. Proc. 93-27, 1993-2 C.B. 343, and Rev. Proc. 2001-43, 2001-2 C.B.191, are inapplicable because they apply only to partnership profits interests.

Held, further, I.R.C. sec. 83 applies to a nonvested partnership capital interest transferred in exchange for the performance of services.

Held, further, under sec. 1.83-1(a)(1), Income Tax Regs., the undistributed partnership income allocations attributable to the nonvested 2% partnership capital interest are to be recognized in the income of the transferor.

Held, further, Holdings was the transferor of the 2% partnership capital interest. The undistributed partnership allocations attributable to the 2% capital interest are allocable to the partners holding the remaining interest in Holdings.

James R. Kelley and William T. Ramsey, for petitioners.

Jasper G. Taylor III, Richard L. Hunn, and Michelle A. Spiegel, for intervenor.

W. Benjamin McClendon and Kirk Chaberski, for respondent.

RUWE, Judge:  Respondent issued a notice of final partnership administrative adjustment (FPAA) for the taxable year 2006 and an FPAA for the taxable year 2007 to Crescent Holdings, LLC (Crescent Holdings).  Arthur Fields (petitioner), a partner other than the tax matters partner, filed petitions for readjustment of partnership items under section 6226.[1]  The cases were consolidated for trial, briefing, and opinion.

The issues for decision are:  (1) whether petitioner should be treated as a partner owning a 2% interest in Crescent Holdings for purposes of allocating its profits and losses for the taxable years 2006 and 2007 (years at issue); and (2) if not, how the profits and losses attributable to the 2% interest should be allocated to the other partners.

FINDINGS OF FACT

Some of the facts have been stipulated and are so found.  The stipulation of facts and the attached exhibits are incorporated herein by this reference.

At the time the petitions were filed, Crescent Holdings' principal place of business was in North Carolina.

---

[1]All section references are to the Internal Revenue Code (Code) in effect for the years at issue, and all Rule references are to the Tax Court Rules of Practice and Procedure, unless otherwise directed.

Crescent Resources, LLC (Crescent Resources), was a Georgia limited liability company. Crescent Resources developed and managed commercial, residential, and multifamily real estate projects primarily in the Southeastern and Southwestern United States. Before September 7, 2006, Crescent Resources was wholly owned by Duke Ventures, LLC (Duke Ventures), a Nevada limited liability company. Duke Ventures was an indirect wholly owned subsidiary of Duke Energy Corp. (Duke Energy), a publicly traded company.

Petitioner joined Crescent Resources in 1987 as the vice president of real estate development. Petitioner signed an employment agreement with Crescent Resources on December 3, 1987, which was subsequently amended in 1994 and 1998. At some point in the 1990s petitioner became president of Crescent Resources and a member of the Duke Energy executive team. As a result of his position on the executive team, petitioner was allowed to participate in Duke Energy's nonqualified executive retirement plan.

In 2005 Duke Energy hired Morgan Stanley as a consultant to explore options to monetize the value of Crescent Resources. One of the proposed options was for Duke Energy to sell all or a part of its interest in Crescent Resources. Morgan Stanley informed Duke Energy that its hedge funds would be interested in

purchasing a partial interest in Crescent Resources.  Duke Energy agreed to sell a partial interest in Crescent Resources.

Sale of Crescent Resources

On September 7, 2006, Duke Ventures and Crescent Resources entered into a formation and sale agreement (Formation Agreement) with Morgan Stanley Real Estate Fund V U.S., L.P., Morgan Stanley Real Estate Fund V Special U.S., L.P., Morgan Stanley Real Estate Investors V U.S., L.P., MSP Real Estate Fund V, L.P., and Morgan Stanley Strategic Investments, Inc. (Initial MS Members).  Pursuant to the Formation Agreement, Crescent Holdings, a Delaware limited liability company, was formed on September 7, 2006.  Crescent Holdings is classified as a partnership for Federal income tax purposes.[2]

Pursuant to section 2.2(a) of the Formation Agreement Duke Ventures contributed 100% of its interest in Crescent Resources to Crescent Holdings in exchange for 100% of the member interest in Crescent Holdings.  In accordance with section 2.2(b) Crescent Holdings issued additional member interests to petitioner such that the Crescent Holdings member interests were held 98% by Duke Ventures and 2% by petitioner.  Section 2.2(c) required that, simultaneously

---

[2]Since Crescent Holdings is treated as a partnership for tax purposes, in our discussion the term "partner" refers to petitioner's status as a member of Crescent Holdings, and the term "partnership" refers to Crescent Holdings.

with the transactions in section 2.2(a) and (b), Crescent Resources would enter into a credit agreement and borrow $1,225,000,000, of which $1,187,000,000 would be distributed to Crescent Holdings, which would distribute that amount to Duke Ventures. In accordance with section 2.2(d), Duke Ventures sold 49% of the member interest in Crescent Holdings to the Initial MS Members. Pursuant to the Formation Agreement the Initial MS Members purchased from Duke Ventures a 49% member interest in Crescent Holdings for approximately $415 million.

Concurrent with the Formation Agreement, on September 7, 2006, petitioner entered into a new employment agreement with Crescent Resources. Petitioner agreed to remain the president and chief executive officer of Crescent Resources for three years. On that date petitioner also entered into an agreement and acknowledgment (Fields Agreement) with Crescent Resources and Duke Energy. As an inducement for petitioner to forgo his rights from his previous employment agreement, the Fields Agreement provided that: (1) Duke Energy would credit petitioner with $37,796,000 to an unfunded bookkeeping account to be administered as if maintained under Duke Energy's nonqualified executive retirement plan; and (2) Crescent Holdings would grant petitioner a 2% restricted membership interest in Crescent Holdings subject to section 83 of the Code and in

accordance with the terms stated in Exhibit A to the Fields Agreement.[3]  Exhibit A stated that petitioner's membership interests in Crescent Holdings would be forfeited if he terminated his employment with Crescent Resources before the third anniversary of the formation of Crescent Holdings.[4]  Exhibit A also stated that petitioner's "[i]nterests are nontransferable unless and until forfeiture restrictions shall have lapsed".  Exhibit A required petitioner to pay Crescent Resources an amount sufficient to satisfy all withholding for employment taxes and other applicable taxes before the forfeiture restrictions would lapse.  Exhibit A provided that petitioner is entitled to the same distributions as other holders of member interests and that any distributions he received are not subject to forfeiture.

Petitioner did not make an election under section 83(b) to treat his restricted interest in Crescent Holdings as substantially vested.

On September 7, 2006, Duke Ventures, the Initial MS Members, and petitioner executed an amended and restated limited liability company agreement of Crescent Holdings, LLC (Holdings Agreement).  No priority capital

---

[3]The Fields Agreement states in regard to the 2% interest:  "Holdings is granting Employee a 2% restricted equity interest in Holdings subject to Section 83 of the United States Internal Revenue Code of 1986, amended (the 'Code'), substantially in accordance with the provisions of Exhibit A hereto (the 'Equity Grant')".

[4]The third anniversary was September 7, 2009.

contributions were made by the members on or before September 7, 2006. The Holdings Agreement was amended by the first amendment to amended and restated limited liability company agreement, dated effective as of September 29, 2006, and the second amendment to amended and restated limited liability company agreement, dated effective as of October 11, 2006. The amendments admitted MSREF V U.S. CIP-II Co-Investment Partnership-F, L.P., MSREF V U.S. CIP-II Co-Investment Partnership-C, L.P., and MSREF V U.S. CIP-II Co-Investment Partnership-B, L.P. as additional members to Crescent Holdings.[5] The additional members received their interests out of the 49% interest that the Initial MS Members owned.

Tax Filings of Crescent Holdings

On April 17, 2007, Crescent Holdings filed Form 1065, U.S. Return of Partnership Income, for the taxable year ended December 31, 2006. Crescent Holdings designated Duke Ventures as the tax matters partner on Form 1065.[6] Crescent Holdings issued a Schedule K-1, Partner's Share of Income, Deductions, Credits, etc., to petitioner that allocated him $423,611 of ordinary business

---

[5]We will refer to the member group that consists of these additional members and the Initial MS Members as MSREF.

[6]Duke Ventures was also designated as the tax matters partner on Crescent Holdings' Form 1065 for the taxable year ended December 31, 2007.

income. Petitioner did not receive any distributions from Crescent Holdings in 2006. The income allocated to petitioner was calculated to represent his distributive share of Crescent Holdings' income in accordance with section 704.

Petitioner was surprised he received a Schedule K-1 that allocated income to him because he believed he was not a partner since his interest had not yet vested. Petitioner spoke with Wayne McGee, who was then the chief financial officer of Crescent Resources. Wayne McGee told petitioner that he was not a partner but noted that Crescent Holdings had already filed Schedules K-1 and Morgan Stanley did not want to have to file amended Schedules K-1 for all of the partner investors in MSREF. Petitioner was told that the matter would be corrected for the next tax year. As a result, petitioner reported the Schedule K-1 items on his 2006 Federal income tax return, believing that the matter would be taken care of for the next year.

On April 15, 2008, Crescent Holdings filed Form 1065 for the 2007 tax year. Crescent Holdings issued a Schedule K-1 to petitioner that allocated $3,608,218 of ordinary business income to him. Petitioner did not receive any distributions from Crescent Holdings in 2007. Petitioner was shocked to receive another Schedule K-1 because he believed that Wayne McGee had indicated he would not receive a Schedule K-1 for 2007. Petitioner spoke with Kevin Lambert,

who was then the chief financial officer of Crescent Resources. Kevin Lambert then spoke with the accounting firm that had prepared the Form 1065 and Schedules K-1 for Crescent Holdings. Kevin Lambert told petitioner that the accounting firm believed the economic substance of the transaction indicated that petitioner was a partner. Petitioner was upset but wanted to avoid tax penalties for not properly reporting his income, so he reported the Schedule K-1 items on his 2007 Federal income tax return.

The income allocated to petitioner for the taxable years 2006 and 2007 was calculated to represent his distributive shares under section 702. As a result, petitioner had to pay the tax associated with the income allocations out of his own pocket. Petitioner was unhappy with these substantial out-of-pocket expenses and spoke with the management of Duke Ventures and the board of Crescent Holdings. An agreement was reached whereby Crescent Resources paid $1,900,040 to petitioner on July 16, 2008, to cover the tax he paid on the income allocations for the 2006 and 2007 taxable years. On January 13, 2009, Crescent Resources paid $524,500 to petitioner to cover his estimated tax for the 2008 taxable year.[7]

---

[7]These payments to cover petitioner's tax were not treated by Crescent Holdings as a partnership distribution to petitioner.

Bankruptcy

The financial condition of Crescent Resources began to deteriorate in 2009 and bankruptcy was imminent. Petitioner resigned from Crescent Resources pursuant to a letter dated May 29, 2009, which was delivered on or before June 1, 2009, to Kevin Lambert. Since petitioner resigned before his three-year anniversary on September 7, 2009, his interest in Crescent Holdings was forfeited.[8] In a letter addressed to the holders of member interests in Crescent Holdings dated June 9, 2009, petitioner abandoned whatever interest he had in Crescent Holdings. On June 10, 2009, Crescent Holdings and Crescent Resources filed a petition under chapter 11 of the Bankruptcy Code with the U.S. Bankruptcy Court for the Western District of Texas (bankruptcy court).

By letter dated March 9, 2010, Crescent Holdings, through their counsel in the chapter 11 proceeding, demanded that petitioner repay the $2,424,540 paid to him to cover his 2006, 2007, and 2008 income tax liabilities resulting from the allocation of his distributive shares of income. The letter stated: "As a result of your departure, you forfeited the potential interest upon which the Tax Advance payments were based, along with any right to retain such payments or have them

---

[8]Appendix E of the Holdings Agreement provides that if petitioner terminated his employment prior to September 7, 2009, the 2% interest would be forfeited to Crescent Holdings.

applied to your tax liability." On June 9, 2010, Crescent Holdings and Crescent Resources filed an adversary complaint in the bankruptcy court against petitioner to recover the $2,424,540 of tax advance payments. The adversary complaint stated: "Before the interest vested, however, Fields chose to terminate his employment, forfeiting any interest in Crescent Holdings, and negating his income tax liability arising out of the forfeited interest." The creditors of Crescent Holdings intervened in the bankruptcy proceeding and claimed that any repayment of the $2.4 million was owed to them. Petitioner entered into an agreement with the creditors whereby he agreed to: (1) immediately pay the creditors $600,000; (2) file amended Federal income tax returns; and (3) repay the creditors the balance of the tax advance payments when he received refunds from his amended returns.

Procedural History

Respondent issued an FPAA to Duke Ventures, the tax matters partner for Crescent Holdings, for the 2006 taxable year (2006 FPAA) and an FPAA for the 2007 taxable year (2007 FPAA). The 2006 FPAA increased Crescent Holdings' ordinary income by $11,177,727. The 2007 FPAA decreased Crescent Holdings'

ordinary income by $5,999,968.[9]  The 2006 and 2007 FPAAs determined that petitioner should be treated as a partner of Crescent Holdings for purposes of allocating partnership items.  The 2006 and 2007 FPAAs were also issued to petitioner.

Petitioners timely filed petitions disputing the determinations in the 2006 and 2007 FPAAs.  Duke Ventures (intervenor) as the tax matters partner filed a notice of election to intervene.

OPINION

Jurisdiction

Crescent Holdings is a limited liability company with two or more members; therefore, it is treated as a partnership unless it elects to be treated as a corporation.  See sec. 301.7701-3(b)(1)(i), Proced. & Admin. Regs.  Crescent Holdings did not elect to be treated as a corporation and thus is treated as a partnership for Federal income tax purposes.

The substantive law with respect to the income taxation of partners and partnerships is found in subchapter K, chapter 1, subtitle A of the Code (subchapter K).  The unified audit and litigation procedural rules applicable to

---

[9]The net effect of the 2006 and 2007 FPAAs adjustments to Crescent Holdings' ordinary income was an increase of $5,177,759.

partnerships and their partners were enacted by Congress in the Tax Equity and Fiscal Responsibility Act of 1982 (TEFRA), Pub. L. No. 97-248, sec. 402(a), 96 Stat. at 648, and amended by Congress in the Taxpayer Relief Act of 1997 (TRA 1997), Pub. L. No. 105-34, sec. 1238, 111 Stat. at 1026. The determinations of partnership items in partnership-level proceedings are binding on the partners and may not be challenged in subsequent partner-level proceedings. See secs. 6230(c)(4), 7422(h).

Section 6226 provides for the judicial review of FPAAs. Generally, under section 6226(f) we have jurisdiction to determine all partnership items of the partnership for the partnership taxable year to which the FPAA relates and the proper allocation of those partnership items among the partners. Our jurisdiction is not limited to the partnership items adjusted in the FPAA. See Tigers Eye Trading, LLC v. Commissioner, 138 T.C. 67, 95 (2012); sec. 301.6226(f)-1(a), Proced. & Admin. Regs. Section 6231(a)(3) defines partnership items as "any item required to be taken into account for the partnership's taxable year under any provision of subtitle A to the extent regulations prescribed by the Secretary provide that, for purposes of this subtitle, such item is more appropriately determined at the partnership level than at the partner level." Whether a taxpayer is a partner is a partnership item if the taxpayer's claim that he was not a partner

would affect the distributive shares of the other partners. See Blonien v. Commissioner, 118 T.C. 541, 551-552 (2002). Section 301.6231(a)(3)-1(a)(1)(i), Proced. & Admin. Regs., provides that a partner's share of income and loss is more appropriately determined at the partnership level.

The 2006 and 2007 FPAAs determined that petitioner was a partner of Crescent Holdings for purposes of allocating profits and losses. Petitioner claims that he was not a partner. The allocation of profits and losses of Crescent Holdings to petitioner, Duke Ventures, and MSREF is a partnership item. See sec. 6231(a)(3); sec. 301.6231(a)(3)-1(a)(1)(i), Proced. & Admin. Regs. Accordingly, we have jurisdiction to determine whether petitioner was a partner of Crescent Holdings and the allocation of the profits and losses associated with the 2% interest in Crescent Holdings.

Burden of Proof

The Commissioner's determinations in an FPAA are generally presumed correct, and a party challenging an FPAA has the burden of proving that the Commissioner's determinations are in error. See Rule 142(a); Welch v. Helvering, 290 U.S. 111, 115 (1933); Republic Plaza Props. P'ship v. Commissioner, 107 T.C. 94, 104 (1996). Intervenor argues that the burden of proof is on either petitioner or respondent. Our conclusions, however, are based on a preponderance

of the evidence, and thus the allocation of the burden of proof is immaterial. <u>See</u>

<u>Kimberlin v. Commissioner</u>, 128 T.C. 163, 171 n.4 (2007).

<u>Arguments</u>

Petitioner's right to the 2% interest in Crescent Holdings never vested.

Nevertheless, between the date the 2% interest was granted to him and the date

petitioner forfeited the interest, Crescent Holdings allocated a significant amount

of income to this interest.

Petitioners argue that section 83 applies to the nonvested 2% interest in

Crescent Holdings. Because petitioner's right to the 2% interest never vested, he

was not the owner of the interest under section 1.83-1(a)(1), Income Tax Regs. As

a result, petitioners argue that petitioner should not be allocated any partnership

profits or losses attributable to the interest for the years at issue.

Intervenor argues that section 83 does not apply to the 2% interest.

Intervenor contends that petitioner's interest was a partnership profits interest;

therefore, under Rev. Proc. 93-27, 1993-2 C.B. 343, petitioner was liable for tax

on his share of the undistributed profits of Crescent Holdings for the years at

issue.[10]

---

[10]We note that intervenor does not argue that petitioner was a partner of
Crescent Holdings under sec. 761(b) and, therefore, should be allocated

(continued...)

Respondent argues that Rev. Proc. 93-27 and Rev. Proc. 2001-43, 2001-2 C.B. 191, apply only to partnership profits interests and are inapplicable to a partnership capital interest and that petitioner's interest in Crescent Holdings was a capital interest.[11]  Respondent argues that petitioner's partnership capital interest is subject to section 83 and that since petitioner was not the owner of the interest under section 1.83-1(a)(1), Income Tax Regs., no profit or loss should have been allocated to him for the years at issue.[12]

For good measure intervenor also argues that if Rev. Proc. 93-27 does not apply, then section 1.721-1(b)(1), Income Tax Regs., and not section 83, controls; thus petitioner was the owner of the interest.

_____

[10](...continued)
partnership profits or losses.

[11]Respondent does not argue that Rev. Proc. 93-27, 1993-2 C.B. 343, and Rev. Proc. 2001-43, 2001-2 C.B. 191, are invalid.  Respondent specifically limits his rationale to arguing that petitioner's interest was a partnership capital interest, and thus sec. 83 applies.

[12]In his answers respondent requested the Court to approve the determinations made in the FPAAs.  However, in his pretrial memorandum and posttrial brief, respondent argued that petitioner is not the owner of the 2% interest in Crescent Holdings.

Subchapter K and Rev. Procs. 93-27 and 2001-43

Section 721(a) provides that "[n]o gain or loss shall be recognized to a partnership or to any of its partners in the case of a contribution of property to the partnership in exchange for an interest in the partnership." (Emphasis added.) Section 721 applies to contributions of property; it does not apply to contributions of services. The treatment of a partnership interest received in exchange for services is provided for in section 1.721-1(b)(1), Income Tax Regs.

§ 1.721-1. Nonrecognition of gain or loss on contribution.--

\* \* \* \* \* \* \*

(b)(1) \* \* \* To the extent that any of the partners gives up any part of his right to be repaid his contributions (as distinguished from a share in partnership profits) in favor of another partner as compensation for services \* \* \* section 721 does not apply. The value of an interest in such partnership capital so transferred to a partner as compensation for services constitutes income to the partner under section 61. The amount of such income is the fair market value of the interest in capital so transferred, either at the time the transfer is made for past services, or at the time the services have been rendered where the transfer is conditioned on the completion of the transferee's future services. The time when such income is realized depends on all the facts and circumstances, including any substantial restrictions or conditions on the compensated partner's right to withdraw or otherwise dispose of such interest. \* \* \*

Section 1.721-1(b)(1), Income Tax Regs., provides that if a partner contributes services in exchange for a capital interest in the partnership then the

nonrecognition treatment of section 721 is not applicable. As a result, the partner must recognize the fair market value of his partnership interest in income. "The time when such income is realized depends on all the facts and circumstances, including any substantial restrictions or conditions on the compensated partner's right to withdraw or otherwise dispose of such interest." Sec. 1.721-1(b)(1), Income Tax Regs. The regulation operates as a deferral provision in that the recognition of income may be deferred if there are substantial restrictions on a partner's right to dispose of the interest. However, the regulation differs from section 83 in that section 1.83-1(a)(1), Income Tax Regs., explicitly states that the transferor of the property is regarded as the owner of the property until the property becomes substantially vested. Section 1.721-1(b)(1), Income Tax Regs., is silent as to who is the owner of the property if there are substantial restrictions on a partner's right to dispose of the interest.

Section 1.721-1(b)(1), Income Tax Regs., provides that the receipt of a partnership capital interest in exchange for services is taxable to the service provider. However, courts had been divided over whether the receipt of a partnership profits interest in exchange for services is taxable. See Rev. Proc. 93-27, sec. 3, 1993-2 C.B. at 343.

In July 1993 the Commissioner issued Rev. Proc. 93-27 which stated that if a person receives a partnership profits interest in exchange for services provided to a partnership the Commissioner would not treat the receipt of such an interest as a taxable event. Id. sec. 4.01, 1993-2 C.B. at 344. Rev. Proc. 93-27 defines a profits interest as "a partnership interest other than a capital interest." Id. sec. 2.02, 1993-2 C.B. at 343. A capital interest is defined as "an interest that would give the holder a share of the proceeds if the partnership's assets were sold at fair market value and then the proceeds were distributed in a complete liquidation of the partnership."[13] Id. sec. 2.01.

On August 20, 2001, the Commissioner issued Rev. Proc. 2001-43. Rev. Proc. 2001-43 first clarified Rev. Proc. 93-27 by providing that the determination as to whether a partnership interest is a capital interest or a profits interest is made "at the time the interest is granted, even if, at that time, the interest is substantially nonvested (within the meaning of § 1.83-3(b) of the Income Tax Regulations)."

---

[13]The test used in Rev. Proc. 93-27 to determine whether an interest is a capital interest is similar to the test that had been used by this Court. See Mark IV Pictures, Inc. v. Commissioner, T.C. Memo. 1990-571, 1990 Tax Ct. Memo LEXIS 643, at *20 ("Deciding whether a partner's interest in a partnership is a capital interest, rather than a mere profits interest, turns on whether that partner has the 'right to receive' a share of the partnership's assets upon a hypothetical winding up and liquidation immediately following acquisition of the interest, rather than the mere right to share in future partnership earnings or profits."), aff'd, 969 F.2d 669 (8th Cir. 1992).

Rev. Proc. 2001-43, sec. 3, 2001-2 C.B. at 191. As pertinent to petitioner and intervenor, Rev. Proc. 2001-43, sec. 4, 2001-2 C.B. at 192, states:

> This revenue procedure clarifies that, for purposes of Rev. Proc. 93-27, where a partnership grants an interest in the partnership that is substantially nonvested to a service provider, the service provider will be treated as receiving the interest on the date of its grant, provided that:
>
> .01 The partnership and the service provider treat the service provider as the owner of the partnership interest from the date of its grant and the service provider takes into account the distributive share of partnership income, gain, loss, deduction, and credit associated with that interest in computing the service provider's income tax liability for the entire period during which the service provider has the interest;
>
> .02 Upon the grant of the interest or at the time that the interest becomes substantially vested, neither the partnership nor any of the partners deducts any amount (as wages, compensation, or otherwise) for the fair market value of the interest; and
>
> .03 All other conditions of Rev. Proc. 93-27 are satisfied.

One of the conditions of Rev. Proc. 93-27 is that the partnership interest must be a profits interest as opposed to a capital interest. Rev. Proc. 93-27, sec. 4.01.

Treatises have noted that Rev. Proc. 2001-43 seems to assume that a service provider who receives a nonvested partnership profits interest can be recognized as a partner from the time he receives the interest. See 1 William S. McKee et al.,

Federal Taxation of Partnerships and Partners, par. 5.03, at 5-47 (4th ed. 2007). Intervenor relies on this assumption.

Capital Interest or Profits Interest

Intervenor and respondent each argue that classifying petitioner's interest as either a partnership profits interest or a partnership capital interest determines whether petitioner was the owner of the interest. As a result, the first question we must answer is whether petitioner's interest in Crescent Holdings was a capital interest or a profits interest for purposes of applying Rev. Proc. 93-27 and Rev. Proc. 2001-43.

Rev. Proc. 93-27, sec. 2.01, provides that a "capital interest is an interest that would give the holder a share of the proceeds if the partnership's assets were sold at fair market value and then the proceeds were distributed in a complete liquidation of the partnership." Rev. Proc. 93-27, sec. 2.02, defines a profits interest as "a partnership interest other than a capital interest." The determination of whether a partnership interest is a capital interest or a profits interest is made "at the time the interest is granted, even if, at that time, the interest is substantially nonvested (within the meaning of § 1.83-3(b)". Rev. Proc. 2001-43, sec. 3, 2001-2 C.B. at 191. Petitioner was granted his interest on September 7, 2006.

Respondent argues that petitioner received a capital interest in Crescent Holdings. Intervenor argues that petitioner received a profits interest. Both intervenor and respondent point to the Holdings Agreement to support their respective positions. We look to the Holdings Agreement to determine if petitioner would have received a share of the proceeds in a hypothetical liquidation of Crescent Holdings on September 7, 2006. See Mark IV Pictures, Inc. v. Commissioner, T.C. Memo. 1990-571, 1990 Tax Ct. Memo LEXIS 643, at *20-*21 (reviewing the articles of limited partnership to determine if the taxpayer had a capital interest), aff'd, 969 F.2d 669 (8th Cir. 1992).

Section 9 of Appendix E to the Holdings Agreement states that petitioner's interest in Crescent Holdings shall be subject to all the terms and conditions of the Holdings Agreement. Section 4 of Appendix E states "Arthur W. Fields shall be entitled to participate, from time to time, in distributions from the Company to its Members in proportion to his Percentage Interest". Appendix A defines percentage interest as "the percentage set forth on Exhibit A". Exhibit A states that petitioner has an initial percentage interest of 2%. Exhibit A of the Fields Agreement states that petitioner's entitlement to distributions is the "[s]ame as all other holders of the issued and outstanding membership interests". Section 4 of

Appendix E to the Holdings Agreement provides that distributions petitioner receives are not subject to forfeiture.

Section 12.02 of the Holdings Agreement provides rules for the dissolution of Crescent Holdings. Section 12.02(c)(i) provides that the proceeds of the sale of Crescent Holdings and its assets shall be distributed in the following order of priority: (1) the satisfaction of the debts and liabilities of Crescent Holdings; (2) the satisfaction of the expenses of liquidation; and (3) the setting up of a reserve for contingent liabilities. Section 12.02(c)(ii) provides that if there is a balance remaining after distributions to satisfy section 12.02(c)(i), then the balance shall be distributed to the members in accordance with section 6.03.

Section 6.03 of the Holdings Agreement is entitled "Distributions in Liquidation." Section 6.03 provides that upon the dissolution of Crescent Holdings "the proceeds of sale and other assets of the Company distributable to the Members under section 12.02(c)(ii) shall be distributed * * * to the Members in accordance with Section 6.02."

Section 6.02 of the Holdings Agreement is entitled "Distributions." Section 6.02(a) states "[e]xcept as provided in Section 6.03 and subject to * * * the provisions of section 6.02(c) * * * the Executive Committee shall have the sole authority to approve the making of distributions to the Members". Section 6.02(a)

states "[a]ll distributions made in accordance with the terms of this Section 6.02 shall be made in the following order of priority:" (1) each member shall receive a distribution in the amount of its priority capital contributions and a 20% cumulative annual preferred return thereon; and (2) "[t]hereafter, any remaining amount shall be distributed to the Members in proportion to their then current Percentage Interests at the time of such distribution."

Appendix A of the Holdings Agreement defines priority capital contributions as any capital contribution made by a member pursuant to section 4.02. Section 4.02 provides that the members of Crescent Holdings may be requested to make additional capital contributions. In his opening brief respondent requested as a proposed fact that no priority capital contributions were made to Crescent Holdings on or before September 7, 2006. Intervenor did not object to this proposed fact; and nothing in the record indicates that a priority capital contribution was made on or before September 7, 2006. Therefore, we find that no priority capital contributions were made on or before September 7, 2006.

Section 6.02(a) of the Holdings Agreement indicates that, absent priority capital contributions, the members are entitled to receive a liquidation distribution equal to their percentage interest. At the time of formation, petitioner had an initial percentage interest of 2%. Therefore, respondent argues that petitioner

would have received 2% of the distributions from the proceeds of a hypothetical liquidation on September 7, 2006. Respondent in his opening brief describes the above-mentioned sections of the Holdings Agreement and concludes that since petitioner would have received a distribution from a hypothetical liquidation on September 7, 2006, then petitioner's interest was a capital interest as defined by Rev. Proc. 93-27.

Intervenor disagrees. Intervenor notes that petitioner did not contribute any money to receive his interest and he was not credited with a beginning capital account balance. Intervenor summarily argues that if Crescent Holdings had liquidated on September 7, 2006, petitioner would not have had a balance in his capital account and, therefore, would not have received a distribution under section 6.02(c) of the Holdings Agreement.

Section 6.02(c) of the Holdings Agreement states: "The Members acknowledge and agree that, unless the Executive Committee determines otherwise and except as otherwise provided in Section 6.8(d) of the Formation Agreement, the Company shall make annual distributions".[14] Section 6.02(c) then provides that the amount of the annual distributions will be the lesser of: (1) the

---

[14]Sec. 6.02(c) provides that the annual distribution is made every fiscal year as soon as practicable following the end of the fiscal year.

maximum amount permitted under the Delaware Limited Liability Company Act and under loan and other credit agreements; and (2) an amount that is based on the unreturned capital of Crescent Holdings and priority capital contributions.[15] Intervenor does not elaborate or explain why it believes section 6.02(c) would prevent petitioner from receiving a distribution in a hypothetical liquidation on September 7, 2006.

Intervenor's reliance on section 6.02(c) is inapposite. Section 6.02(c) determines only the amount of the total distribution to all members. Section 6.02(c)(v) states "the Executive Committee shall authorize for distribution to the Members in accordance with Section 6.02(a) an aggregate amount".[16] (Emphasis added.) Section 6.02(a) determines to whom the distribution is made from this aggregate amount. Section 6.02(a) clearly states that after an amount is distributed for the return of priority capital contributions, "the remaining amount shall be distributed to the Members in proportion to their current Percentage Interests at the time of such distribution." Section 6.02(a) does not limit the remaining

---

[15]There were no priority capital contributions on or before September 7, 2006. Therefore, a hypothetical liquidation distribution would be based on the unreturned capital.

[16]Sec. 6.02 indicates that the aggregate amount is the total amount that is available as an annual distribution to the members.

amount of the distribution to members that have contributed capital to Crescent Holdings. In fact, section 4 of Appendix E specifically provides that petitioner is entitled to distributions from Crescent Holdings in proportion to his percentage interest and that any distributions he receives are not subject to forfeiture. Furthermore, Exhibit A to the Fields Agreement also provides that petitioner's entitlement to distributions is the same as other members. Intervenor's argument that section 6.02(c) prevents petitioner from receiving a distribution is contradicted by section 6.02(a) of the Holdings Agreement, Section 4 of Appendix E, and Exhibit A to the Fields Agreement.

Intervenor's argument also fails because Appendix A of the Holdings Agreement defines unreturned capital in terms of the unreturned capital of Crescent Holdings, not in terms of the individual members. Section 6.02(c) determines the amount of the distribution, which is, in part, based on unreturned capital. However, Appendix A clearly defines unreturned capital in terms of the unreturned capital of Crescent Holdings. This amount is then distributed to the members in accordance with section 6.02(a). Therefore, intervenor's reliance on the term "unreturned capital" in determining the amount of the distribution to an individual member is misplaced.

The Holdings Agreement indicates that if Crescent Holdings had liquidated on September 7, 2006, petitioner would have received a share of the proceeds.[17] Accordingly, we hold that petitioner's interest in Crescent Holdings would have entitled him to receive a distribution if Crescent Holdings had liquidated on September 7, 2006. As a result, petitioner's interest in Crescent Holdings is a capital interest as defined by Rev. Proc. 93-27.[18] Therefore, we hold that Rev. Proc. 2001-43 and Rev. Proc. 93-27 are not applicable to our analysis in determining whether petitioner should recognize in income the partnership profits and losses allocated to the 2% interest.

Provisions Governing a Nonvested Partnership Capital Interest

Petitioners and respondent argue that section 1.83-1(a)(1), Income Tax Regs., provides that petitioner was not the owner of the interest for purposes of income recognition. Intervenor argues that section 1.721-1(b)(1), Income Tax

---

[17]Appendix E of the Holdings Agreement provides that if petitioner died, became disabled, was terminated, or there was a certain change in control of Crescent Holdings, then he would immediately vest in the 2% interest. We note that allowing petitioner to receive a distribution if Crescent Holdings liquidated is consistent with Appendix E, which essentially provides that if, through no initiative of his own, petitioner could not fulfill his tenure as chief executive officer, he would immediately vest in the 2% interest.

[18]Since we find that petitioner's interest is a capital interest, we need not decide whether sec. 83 applies to partnership profit interests.

Regs., provides that petitioner was the owner. We must first decide whether section 83 applies to the transfer of a partnership capital interest in exchange for services.

Section 83

Section 83(a) generally provides that where property is transferred to a taxpayer in connection with the performance of services, the fair market value of the property, less the amount paid for the property, shall be included in the taxpayer's gross income in the first taxable year in which the taxpayer's rights in the property are "transferable or are not subject to a substantial risk of forfeiture". Section 83(a) is a deferral provision that allows a taxpayer to defer recognition of income to the taxable year in which his interest in the property is transferable or no longer subject to a substantial risk of forfeiture.[19]

Section 1.83-1(a)(1), Income Tax Regs., provides that "[u]ntil such property becomes substantially vested, the transferor shall be regarded as the owner of such

---

[19]Sec. 83(a) deferral treatment is not mandatory. Sec. 83(b) allows a taxpayer to elect out of the sec. 83(a) deferral and recognize the fair market value of the property, less any amount paid for the property, as gross income in the taxable year the property is transferred. The taxpayer must elect this treatment by filing an election with the Commissioner no later than 30 days after the date of the transfer. Sec. 83(b)(2). If an election is not made under sec. 83(b), then a taxpayer will recognize the income under sec. 83(a). Petitioner did not file a sec. 83(b) election. Therefore, the 2% interest will be subject to sec. 83(a) treatment if sec. 83 is applicable to the 2% interest.

property". Section 1.83-3(b), Income Tax Regs., provides that "[p]roperty is substantially vested for such purposes when it is either transferable or not subject to a substantial risk of forfeiture." As a result, for income recognition purposes the transferor of the property is regarded as the owner of the property until the property becomes substantially vested.

This Court has held that a partnership capital interest is property for purposes of section 83. See, e.g., Larson v. Commissioner, T.C. Memo. 1988-387, 1988 Tax Ct. Memo LEXIS 418, at *7 ("Under section 83, a compensatory transfer of a partnership capital interest results in taxable income to the transferee to the extent that the fair market value of the interest exceeds the amount paid for the interest, in the year that the rights to the interest are transferable or not subject to a substantial risk of forfeiture.").[20] These cases did not discuss who owned the partnership capital interest prior to it becoming substantially vested, however, in these cases the Court applied section 83 to determine the taxable year in which the transferee would recognize income.

In Hensel Phelps Constr. Co. v. Commissioner, 74 T.C. 939 (1980), aff'd, 703 F.2d 485 (10th Cir. 1983), the taxpayer agreed to construct an office building

---

[20]We have also held that sec. 83 applies to options to purchase partnership units. See Schulman v. Commissioner, 93 T.C. 623, 631-635 (1989).

in exchange for a 50% capital interest in a partnership. Id. at 947-948. The primary issue in Hensel Phelps was whether the taxpayer received its partnership interest in 1973 or 1974. Id. at 947. The Court stated that the performance of services in exchange for a partnership capital interest was a taxable event under section 61, citing section 1.721-1(b)(1), Income Tax Regs., for support. Id. The Court found as a fact that the taxpayer received its partnership interest in 1974 and held that under section 1.721-1(b)(1), Income Tax Regs., the taxpayer realized taxable income in 1974. Id. at 948. However, the Court noted that even if the taxpayer had received its partnership interest in 1973, at that time the interest would have been "nontransferable within the meaning of section 83(c)(2)." Id. at 953. It was not until 1974 that the taxpayer's interest was transferable or not subject to a substantial risk of forfeiture within the meaning of section 83(c). Id. "Consequently, pursuant to section 83, the taxable event occurred during * * * 1974". Id.

In Mark IV Pictures, Inc. v. Commissioner, 1990 Tax Ct. Memo LEXIS 643, at *21, the taxpayers received capital interests in limited partnerships in exchange for services. The Court noted that section 1.721-1(b)(1), Income Tax Regs., provides for the amount of the income to be recognized under section 61. Id. at *21-*22. The taxpayers argued that their capital interests were subject to a

substantial risk of forfeiture and thus section 83 precluded the recognition of income for the years at issue. The Court analyzed the capital interests under section 83 and determined that the "interests were freely transferable and not subject to substantial risk of forfeiture." Id. at *24.

Hensel Phelps Constr. Co. and Mark IV Pictures, Inc. held that section 1.721-1(b)(1), Income Tax Regs., requires income to be realized under section 61 when a partnership capital interest is received in exchange for services. However, these cases provide that section 83 governs the timing of when to recognize income from the receipt of a partnership capital interest subject to a substantial risk of forfeiture.

In Campbell v. Commissioner, T.C. Memo. 1990-162, 1990 Tax Ct. Memo LEXIS 144, at *52-*53, aff'd in part, rev'd in part, 943 F.2d 815 (8th Cir. 1991), the taxpayer received partnership profit interests in exchange for services. The Court noted that under State law and the Uniform Limited Partnership Act any partnership interest is personal property. Id. at *64. The Court held that partnership capital interests and profit interests are personal property and "are literally within the terms of section 83." Id. at *65. As a result, the Court concluded that the taxpayer's partnership profit interests were property within the

meaning of section 83 and should have been included in income under section 83. Id. at *64-*67, *78.

On appeal the Court of Appeals for the Eighth Circuit noted that "some question exists as to the applicability of section 83 to a service partner's receipt of a profits interest. * * * Arguably, the section 1.721-1(b)(1) distinction between capital and profits interests and the regulations under section 83 create the implication that a profits interest is not property subject to section 83." Campbell v. Commissioner, 943 F.2d at 821 n.7.[21] As pertinent to this case, the court then stated that a partnership capital interest was an interest in intangible personal property; therefore, "the receipt of a capital interest appears to be taxable under the authority of section 83 of the Internal Revenue Code." Id. at 820. The Court of Appeals reversed the Tax Court's decision because it found that the taxpayer's partnership profits interests did not have a fair market value at the time he received them; therefore, the taxpayer did not have income. Id. at 823.

In these opinions the Tax Court and the Court of Appeals for the Eighth Circuit have indicated that section 83 applies to partnership capital interests. Respondent cited the above-mentioned opinions, except for Campbell, in his

---

[21]We have found that petitioner's interest in Crescent Holdings was a capital interest. Therefore, we do not need to decide whether sec. 83 applies to a partnership profits interest.

opening brief. Intervenor did not discuss these cases nor cite any case where the Court held that section 83 was not applicable to a partnership capital interest.

Instead, intervenor argues that sections 1.83-1(a)(1) and 1.721-1(b)(1), Income Tax Regs., are in conflict. Intervenor notes that section 1.83-1(a)(1), Income Tax Regs., includes the statement "[u]ntil such property becomes substantially vested, the transferor shall be regarded as the owner of such property," whereas section 1.721-1(b)(1), Income Tax Regs., does not include any statement regarding who is to be regarded as the owner of the property before it becomes substantially vested. Intervenor argues the absence of this language in section 1.721-1(b)(1), Income Tax Regs., indicates that the transferee should be considered the owner of the partnership interest before it becomes substantially vested. Intervenor argues that the Court should apply section 1.721-1(b)(1), Income Tax Regs., because it specifically applies to the transfer of an interest in partnership capital as compensation for services whereas section 83 and section 1.83-1(a)(1), Income Tax Regs., are general provisions that do not even mention partnerships.

Intervenor cites no cases to support this argument. As we have previously noted, this Court has held that a partnership capital interest is property for

purposes of section 83.  See Larson v. Commissioner, 1988 Tax Ct. Memo LEXIS 418, at *7.

Intervenor argues that section 83 does not apply to a transfer of partnership capital interests in exchange for services because section 83 and its legislative history do not state that section 83 applies to partnerships or even mention partnerships.  It is true that section 83 and its legislative history do not mention partnerships.  However, a statement that section 83 applies to partnerships is not necessary because section 83(a) explicitly states:  "If, in connection with the performance of services, property is transferred to any person".  (Emphasis added.) Section 83 uses the term "property", which is broad.  Section 1.83-3(e), Income Tax Regs., provides that "[f]or purposes of section 83 and the regulations thereunder, the term 'property' includes real and personal property other than either money or an unfunded and unsecured promise to pay money or property in the future."[22]  Crescent Holdings is a Delaware limited liability company.  Del. Code Ann. tit. 6, sec. 18-701 (2005) states that a "limited liability company

---

[22]We note that proposed regulations issued on May 24, 2005, "provide that a partnership interest is property within the meaning of section 83, and that the transfer of a partnership interest in connection with the performance of services is subject to section 83."  70 Fed. Reg. 29676 (May 24, 2005).

interest is personal property."[23]  The Delaware statute classifying petitioner's interest in Crescent Holdings as personal property means petitioner's interest is "literally within the terms of section 83."  Campbell v. Commissioner, 1990 Tax Ct. Memo LEXIS 144, at *64-*65 (noting that under State law a partnership capital interest was personal property and was therefore property for purposes of section 83).

Intervenor argues that the discussion of restricted stock plans in H.R. Rept. No. 91-413, at 86 (1969), 1969-3 C.B. (Part 1) 200, 254, indicates that Congress did not intend section 83 to apply to partnerships.  However, further review of the legislative history to section 83 shows that H.R. Conf. Rept. No. 91-782, at 303 (1969), 1969-3 C.B. 644, 659, states "[t]he House bill provides that a person who receives compensation in the form of property, such as stock".  (Emphasis added.) The use of the phrase "property, such as stock" in H.R. Conf. Rept. No. 91-782 indicates that Congress intended that stock is merely one of the types of property section 83 applies to, not the only type of property subject to section 83.  See also Montelepre Systemed, Inc. v. Commissioner, T.C. Memo. 1991-46, 1991 Tax Ct. Memo LEXIS 65, at *11 ("It is clear, however, that Congress intended section 83

---

[23]In fact, sec. 5.03 of the Holdings Agreement also provides that the "interests of all Members in the Company are personal property."

to apply to all restricted 'property,' not just stock."), aff'd, 956 F.2d 496 (5th Cir. 1992). This is further evidenced by the fact that the discussions of section 83 in H.R. Rept. No. 91-413 and H.R. Conf. Rept. No. 91-782 are both subtitled "Restricted Property", not restricted stock.[24]

Regardless of Congress' intention that intervenor attempts to glean from the legislative history, the language of section 83, enacted by Congress, is clear: section 83 applies to property. "Indeed, if Congress intended section 83(a) to apply solely to restricted stock used to compensate employees, it could have used much narrower language. Instead, Congress made section 83(a) applicable to all restricted 'property,' not just stock; to property transferred to 'any person,' not just employees". Alves v. Commissioner, 734 F.2d 478, 481-482 (9th Cir. 1984), aff'g 79 T.C. 864 (1982). Intervenor's search through the legislative history to find what Congress did and did not intend section 83 to apply to is misdirected.

---

[24]Further support is found in a comment made in the Senate Finance Committee's report concerning the enactment of sec. 707(a)(2): "if a partner received an interest in a partnership in exchange for services, he may recognize income upon that receipt. See sections 61 and 83". S. Comm. on Finance, Deficit Reduction Act of 1984, Explanation of Provisions Approved by the Committee on March 21, 1984, S. Prt. 98-169 (Vol. 1), at 226 n.4 (S. Comm. Print 1984).

Limitations to the applicability of section 83 are found in section 83(e).[25]  None of

the limitations found in section 83(e) apply to the instant case.  "We have held that

section 83 should be given broad application so as to cover transfers not

specifically excepted."  Montelepre Systemed, Inc. v. Commissioner, 1991 Tax Ct.

Memo LEXIS 65, at *17.

Section 83 governs the timing of income recognition when property is

transferred in exchange for services.  Section 721 provides that the contribution of

property to a partnership in exchange for an interest in the partnership is a

nonrecognition event for the partner and partnership.  Section 83 does not conflict

with section 721.

---

[25]SEC. 83(e).  Applicability of Section.--This section shall not apply to--

(1) a transaction to which section 421 applies,

(2) a transfer to or from a trust described in section 401(a) or a transfer under an annuity plan which meets the requirements of section 404(a)(2),

(3) the transfer of an option without a readily ascertainable fair market value,

(4) the transfer of property pursuant to the exercise of an option with a readily ascertainable fair market value at the date of grant, or

(5) group-term life insurance to which section 79 applies.

We have previously applied section 83 to partnership capital interests. See Larson v. Commissioner, 1988 Tax Ct. Memo LEXIS 418, at *7; see also Schulman v. Commissioner, 93 T.C. 623, 631-635 (1989) (section 83 applies to options to purchase partnership units). Nothing in the language of section 83 or its legislative history indicates that Congress did not intend for section 83 to apply to partnerships. Accordingly, we hold that section 83 applies to the transfer of a partnership capital interest in exchange for the performance of services.

Allocation of Undistributed Partnership Income

Section 1.83-1(a)(1), Income Tax Regs., states that "any income from such property received by the employee or independent contractor (or beneficiary thereof) or the right to the use of such property by the employee or independent contractor constitutes additional compensation and shall be included in the gross income of such employee or independent contractor for the taxable year in which such income is received or such use is made available." As a result, if the transferee receives an actual distribution of income from the property before his right is substantially vested, then this income is treated as additional compensation and the transferee must include it in his gross income in the year received.[26]

_____

[26]We note that petitioner did not receive any actual distributions with regard to the 2% interest in Crescent Holdings.

Section 1.83-1(a)(1), Income Tax Regs., creates a dichotomy for ownership between the property and income actually received from the property: it treats income the transferee actually received from the property as owned by the transferee and treats property that is not substantially vested as owned by the transferor.

In addition to the dichotomy created by section 1.83-1(a)(1), Income Tax Regs., between property and income received by the transferee, there exists another stream of potential income recognition--income attributable to property (such as a partnership interest) but not actually distributed. Section 83 does not specifically address whether recognition of undistributed income attributable to the property is also deferred. Similarly, section 1.83-1(a)(1), Income Tax Regs., does not address whether income attributable to the property, but not actually received by the transferee, is included in the gross income of the transferee or the transferor. Particular to this case, section 1.83-1(a)(1), Income Tax Regs., is silent as to whether the distributive share of partnership income attributable to the nonvested 2% partnership interest is included in the income of the transferor or the transferee (petitioner).

Petitioners and respondent argue that section 1.83-1(a)(1), Income Tax Regs., provides that petitioner was not the owner of the 2% interest for purposes

of income recognition. Therefore, they argue that petitioner should not have been allocated any of the partnership profits or losses attributable to the 2% interest. In its opening brief intervenor notes that if this regulation applies to the 2% interest, then petitioner would not be treated as the owner of the interest for income recognition purposes until the interest is substantially vested. However, intervenor argues that section 1.83-1(a)(1), Income Tax Regs., is in conflict with section 1.721-1(b)(1), Income Tax Regs. Intervenor argues that section 1.721-1(b)(1), Income Tax Regs., applies to the 2% interest; therefore, petitioner should be allocated the partnership profits and losses attributable to the 2% interest. This appears to be an issue of first impression as no case has specifically decided whether the transferor or the transferee of a nonvested partnership capital interest must include in gross income the undistributed partnership profit or loss allocations attributable to the partnership capital interest.

Section 1.83-1(a)(1), Income Tax Regs., states "[u]ntil such property becomes substantially vested, the transferor shall be regarded as the owner of such property". The regulation also provides that any income actually received by the transferee from the property constitutes additional compensation and is included in the gross income of the transferee. However, the regulation does not address whether income attributable to the property, but not actually received by the

transferee, is included in the gross income of the transferee or the transferor. Although neither section 83 nor section 1.83-1(a)(1), Income Tax Regs., specifically address this issue, for the reasons below we hold that the transferor of a partnership capital interest must recognize in income the undistributed partnership profit or loss allocations attributable to a nonvested capital interest.

      (1) <u>The Purpose of Section 83 Is To Defer Recognition of Income When Property is Subject to a Substantial Risk of Forfeiture</u>.

Section 83 is a deferral provision that delays the recognition of income to the taxable year in which the transferee's interest in the property is either transferable or not subject to a substantial risk of forfeiture. The policy underpinning section 83 is that it would be unfair to require a taxpayer to recognize the fair market value of property in income if the taxpayer may never own the property.

"The rights of a person in property are subject to a substantial risk of forfeiture if such person's rights to full enjoyment of such property are conditioned upon the future performance of substantial services by any individual." Sec. 83(c)(1); <u>see also</u> sec. 1.83-3(c), Income Tax Regs. When Crescent Holdings was formed, petitioner was the president and chief executive officer of Crescent Resources. Crescent Resources was to become the primary

asset of Crescent Holdings. Exhibit A to the Fields Agreement stated that the 2% interest would be forfeited if petitioner terminated his employment with Crescent Resources before September 7, 2009. Therefore, the 2% interest was conditioned upon petitioner's future performance of substantial services. As a result, the 2% interest was subject to a substantial risk of forfeiture. See sec. 83(c)(1); sec. 1.83-3(c)(1), Income Tax Regs.

"[T]he rights of a person in property are transferable if such person can transfer any interest in the property to any person other than the transferor of the property, but only if the rights in such property of such transferee are not subject to a substantial risk of forfeiture." Sec. 1.83-3(d), Income Tax Regs. Exhibit A to the Fields Agreement states that petitioner's "[i]nterests are nontransferable unless and until forfeiture restrictions shall have lapsed". Petitioner resigned from his position at Crescent Resources before the forfeiture restrictions lapsed. As a result, the 2% interest never became transferable under section 1.83-3(d), Income Tax Regs. Under section 83(a) petitioner did not recognize the fair market value of the 2% interest as income because this interest never vested.

Petitioner's right to receive the undistributed income allocations attributable to the 2% interest was subject to the same substantial risk of forfeiture as his right to the 2% interest. If petitioner forfeited his right to the 2% interest, then he

would also forfeit his right to receive any benefit from the undistributed income allocations. In other words, petitioner's right to eventually receive any benefit from the undistributed income allocations was entirely dependent on whether his right vested in the 2% interest. When petitioner resigned from his position with Crescent Resources, he forfeited his right to the 2% interest, which resulted in him losing any rights he would have had to the undistributed income attributable to the 2% interest. Therefore, we find that the undistributed income allocations were subject to the same substantial risk of forfeiture as the 2% interest in Crescent Holdings. The 2% interest was not recognized in petitioner's income because it was subject to a substantial risk of forfeiture. Consistency requires that the undistributed partnership income allocations attributable to the 2% interest, which were subject to the same risk of forfeiture, should also not be recognized in petitioner's income.

If petitioner had continued his employment with Crescent Resources until September 7, 2009, then his interest would have vested. If this had occurred, then under section 83(a) petitioner would have recognized the fair market value of his partnership interest in gross income in the 2009 taxable year. The fair market value of the interest is measured at the time the property becomes substantially vested, which would have been on September 7, 2009. See sec. 83(a); sec. 1.83-

1(a)(1), Income Tax Regs.  The fair market value of petitioner's interest on September 7, 2009, would have been enhanced by income allocable to his interest for which no distributions had yet been paid.

Since petitioner forfeited his right to the 2% interest before it substantially vested, he never owned the interest.  Petitioner never received any of the economic benefits from the undistributed partnership income allocations to the 2% interest.  Requiring petitioner to recognize the partnership allocations in his income is inconsistent with the fact that he received no economic benefit from the allocations.[27]  When petitioner's interest was forfeited to Crescent Holdings, his right to the 2% interest and to receive any benefit from the partnership income allocations reverted to Crescent Holdings.[28]  As a result, Crescent Holdings

_____

[27]We note that Crescent Holdings filed an adversary complaint in the bankruptcy court against petitioner, which stated "Fields chose to terminate his employment, forfeiting any interest in Crescent Holdings, and negating his income tax liability arising out of the forfeited interest."  The adversary complaint eventually resulted in petitioner paying $600,000 to the creditors of Crescent Holdings and promising to pay the remainder when he received refunds from the filing of amended returns for the years at issue.  It is inconsistent for intervenor to have argued to the bankruptcy court that petitioner's tax liability for the allocations to his forfeited interest was negated and then argue to this Court that petitioner should be liable to pay tax on the income allocated to his forfeited interest.

[28]Appendix E of the Holdings Agreement provides that if petitioner terminates his employment prior to September 7, 2009, his interest would be

(continued...)

became equally owned by Duke Ventures and MSREF. The remaining partners, Duke Ventures and MSREF, received any economic benefits attributable to the undistributed income allocations.

(2) Section 1.83-1(a)(1), Income Tax Regs., Does Not Conflict With Section 1.721-1(b)(1), Income Tax Regs.

Intervenor argues that section 1.83-1(a)(1), Income Tax Regs., conflicts with section 1.721-1(b)(1), Income Tax Regs., and since section 1.721-1(b)(1), Income Tax Regs., specifically applies to partnerships we should apply that regulation to determine who should be allocated the partnership profits and losses attributable to the 2% interest.

Section 721(a) provides that "[n]o gain or loss shall be recognized to a partnership or to any of its partners in the case of a contribution of property to the partnership in exchange for an interest in the partnership." (Emphasis added.) Section 721 applies to contributions of property; it does not apply to contributions of services. Section 1.721-1(b)(1), Income Tax Regs., provides that the nonrecognition treatment for contributions of property to a partnership provided by section 721 does not apply to contributions of services. In other words, the regulation requires the service provider to recognize as income the fair market

_____

[28](...continued)
forfeited to Crescent Holdings.

value of his partnership capital interest. Section 1.721-1(b)(1), Income Tax Regs., also states that the "time when such income is realized depends on all the facts and circumstances, including any substantial restrictions or conditions on the compensated partner's right to withdraw or otherwise dispose of such interest." This regulation provides no statements regarding who is treated as the owner of the partnership capital interest prior to the capital interest becoming substantially vested. As a result, the provision in section 1.83-1(a)(1), Income Tax Regs., providing that the transferor of the property is treated as the owner of the property until it becomes substantially vested, does not conflict with section 1.721-1(b)(1), Income Tax Regs., or with section 721.

We hold that under section 1.83-1(a)(1), Income Tax Regs., undistributed partnership allocations attributable to a nonvested partnership capital interest are to be recognized in the gross income of the transferor.[29]

---

[29]Petitioner also argues that Crescent Holdings and intervenor should be judicially estopped from asserting that petitioner should be allocated the undistributed partnership profits or losses because in the adversary complaint filed in the bankruptcy court Crescent Holdings argued that because petitioner forfeited his interest his income tax liability arising out of the forfeited interest was negated. Since we hold that petitioner should not be allocated any of the undistributed partnership profits and losses attributable to the 2% interest, we need not address this argument.

Identity of the Transferor

Section 1.83-1(a)(1), Income Tax Regs., provides that the transferor of petitioner's interest in Crescent Holdings will be treated as the owner of petitioner's interest. We must first determine who the transferor was in order to determine who is allocated the profits and losses associated with petitioner's 2% interest for the years at issue.

Respondent argues that Duke Ventures was the transferor and thus petitioner's 2% interest in Crescent Holdings should be allocated solely to Duke Ventures. In the alternative, respondent argues that if we find that Crescent Holdings was the transferor then petitioner's 2% interest should be allocated proportionally between Duke Ventures and MSREF. Intervenor argues that Crescent Holdings was the transferor, therefore, petitioner's interest should be allocated on a pro rata basis to Duke Ventures and MSREF. Petitioner takes no position as to how the 2% interest should be allocated.

Pursuant to section 2.2(a) of the Formation Agreement Duke Ventures contributed 100% of its interest in Crescent Resources to Crescent Holdings in exchange for 100% of the member interest in Crescent Holdings. In accordance with section 2.2(b) Crescent Holdings issued additional member interests to petitioner such that the Crescent Holdings member interests were held 98% by

Duke Ventures and 2% by petitioner.  Pursuant to section 2.2(d), Duke Ventures sold 49% of the member interest in Crescent Holdings to the Initial MS Members.

Section 2.2 of the Formation Agreement clearly provides that Crescent Holdings was the transferor of petitioner's 2% interest in Crescent Holdings.  Both respondent and intervenor agree that if Crescent Holdings was the transferor of petitioner's 2% interest, then the partnership profits and losses associated with the 2% interest for the years at issue should be allocated on a pro rata basis to Duke Ventures and MSREF.  Furthermore, the 2% interest was forfeited to Crescent Holdings, which in turn was owned by Duke Ventures and MSREF.  Therefore, Duke Ventures and MSREF will both receive any of the economic benefits attributable to the 2% interest.  We hold that the partnership items, profits and losses and the FPAA income adjustments associated with the 2% interest in Crescent Holdings for the years at issue should be allocated on a pro rata basis to Duke Ventures and MSREF.

Conclusion

Petitioner should not be regarded as the owner of the 2% interest in Crescent Holdings for the years at issue.  As a result, petitioner should not have been allocated any partnership profits or losses for the years at issue.  Instead, the

partnership profits or losses associated with the 2% interest should be allocated on a pro rata basis to Duke Ventures and MSREF.

In reaching our decision, we have considered all arguments made by the parties, and to the extent not mentioned or addressed, they are irrelevant or without merit.

To reflect the foregoing,

<u>Decisions will be entered under</u>

<u>Rule 155</u>.